## ROBERT McCLARIN, Respondent, v. MAX GRENZ-FELDER, Appellant.

### St. Louis Court of Appeals, March 22, 1910.

1. **PHYSICIANS AND SURGEONS: Negligent Treatment: Liability of Physician.** The fact that a mode of treatment by a physician produced the injuries for which suit was brought would not necessarily lay the physician liable, if such method was a regular and approved method of treating the ailment, for untoward results sometimes follow the most scientific surgery.

2. ——: ——: ——: **Jury Question.** In an action against a physician for negligence in treating plaintiff for hernia, *held*, there was proof the injuries complained of might have been caused by the treatment and proof that the treatment was improper, and hence the case was properly submitted to the jury.

3. ——: **Care Required: Specialists.** A physician, holding himself out as a specialist in treating hernia, is bound to use that degree of care and skill possessed by hernia specialists in the city where he practices or in other cities following the same or more advanced methods of treatment, or by physicians making a special study and practice of the disease, so as to give them more skill and experience in treating it than possessed by general practitioners.

4. ——: **Negligent Treatment: Liability of Physician: Following Recognized System of Treatment.** In ascertaining where the requisite skill and care were employed by a physician in a given case, contemporary knowledge of the ailment and how to relieve it are considered. If expert practitioners of the physician's school agree in opinion about the right method of treating the particular disease and the physician adopts a method not recognized as sound, his conduct should be regarded as an experiment, which renders him liable if it injures the patient; but if the physician's system of treatment is recognized as proper, although other systems also are recognized as proper, he cannot be convicted of negligence if he made use of the one he deemed most suitable for the patient's case, and the question of his responsibility, in that event, would turn on whether he had administered the remedy preferred by him with the degree of care and skill required of a person holding himself out as an expert, and the fact that it was of comparatively recent origin would not *ipso facto* put it in the class of innovating experiments so as to lay him liable for a bad result.

5. **DAMAGES: Instruction: Conformity to Evidence.** Where, in an action against a physician for damages for negligent treatment, there is no proof of permanent injury, the instruction on the measure of damages should not submit that question.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED.

*Wm. R. Gentry* and *Watts, Williams & Dines* for appellant.

(1) The sole and only specification of negligence contained in the petition is as follows: ''Negligently and carelessly injected into the parts affected a preparation which formed a waxy substance and resulted in an inflammation of the intestines.'' Plaintiff having alleged this ground of negligence in his petition, is bound by it and cannot recover upon any other ground. Goodwin v. Herson, 65 Me. 223; Mayo v. Wright, 63 Mich. 32; Jacobs v. Cross, 19 Minn. 523; West v. Martin, 31 Mo. 375. (2) Where the evidence is as consistent with the absence of negligence as it is with the existence of negligence, the case should not be submitted to the jury. McQuay v. Eastwood, 12 Ont. 402; Havens v. Hardesty, 18 Ohio Cir. Ct. 891; 9 Ohio Cir. Dec. 850; De Long v. Delaney, 206 Pa. St. 226. And a verdict for plaintiff on a record like the present one should have been set aside. Winner v. Lathrop, 67 Hun (N. Y.) 511, 22 N. Y. Sup. 516; Feeney v. Spalding, 89 Me. 111; Neifert v. Hasley, 149 Mich. 232; Staloch v. Holm, 100 Minn. 276; Wood v. Wyeth, 94 N. Y. Supp. 360; Mackenzie v. Carman, 92 N. Y. Supp. 1063; English v. Free, 205 Pa. St. 624; Bigney v. Fisher, 26 R. I. 402; Wurdemann v. Barnes, 92 Wis. 206. (3) Negligence under the allegations of the petion is limited to the question as to whether or not the injection of the paraffine into the muscular wall of the

abdomen was negligent. This negligence, if it existed, must consist: 1. In the adoption of this method instead of other methods, or 2. In the manner of its use. The petition does not rely or declare on an express promise to cure, but it is restricted to one or the other of these grounds. Vanhooser v. Berghoff, 90 Mo. 487. (4) A physician or surgeon undertaking the treatment of a patient is not required to exercise the highest degree of skill possible; he is only required to possess and exercise that degree of skill and learning ordinarily possessed and exercised by members of his profession in good standing, practicing in similar localities. Simonds v. Henry, 39 Me. 155; Leighton v. Sargent, 27 N. H. 460, 59 Am. Dec. 388. No particular school of medical practice is preferred by the law; and when a practitioner is called in his treatment is to be tested by the general doctrines of his school and not by those of other schools. Patten v. Wiggin, 51 Me. 597.

*John M. Dickson, R. E. Blodgett* and *Glendy B. Arnold* for respondent.

Defendant is a practicing physician in the city of St. Louis, graduate of the Marion Sims Medical College, adherent of the allopathic or regular school of medicine and devoted especially to the treatment of hernia—a condition in which a portion of the bowel protrudes through an opening in the peritoneum or covering of the abdominal cavity. The hernia, some witnesses say, is due to the enlargement of a natural orifice in the abdominal wall and the enlargement may be congenital, caused by heavy lifting, or in other ways. Defendant advertised in the newspapers as a specialist in the treatment of hernia, plaintiff read the advertisement, and as he had been suffering from hernia for some time, visited defendant to be treated. Plaintiff was employed at the time as a workman in a large wholesale hardware establishment in St. Louis and did

much lifting. He said he was in good health and strong when he first called on defendant December 30, 1906. Defendant then examined him and said he (defendant) could cure plaintiff in thirty minutes and without causing plaintiff to lose time from work. No treatment was administered at the first visit, but plaintiff was told to come back on January 6th and he would be treated, on which day he returned and defendant injected into his right groin over the hernia some aseptic paraffine. The theory of the practice was that this paraffine, after it was injected into the middle of the muscle outside the abdominal cavity and the peritoneum, would form into a compact mass over the hernia, and close and hold closed the orifice in the peritoneum so the bowel could no longer protrude; or possibly hold the bowel in place until the orifice had contracted enough to prevent protrusion. This treatment was administered to plaintiff on January 6th and he was pronounced cured, but says he suffered great pain at the time and continued to suffer pain from then on until he was operated on for peritonitis four or five months later in the city hospital. Plaintiff visited defendant several times after the operation, perhaps every Sunday until he was taken to the hospital, said he complained each visit of his suffering and of a lump in the groin where the syringe had been inserted, but received no attention from defendant other than advice to wear an old suspender across the groin as a truss, which he did without obtaining relief; that defendant declared at every visit he (plaintiff) was cured and was getting along all right. There is little difference between the testimonies of plaintiff and defendant. The latter said plaintiff's frequent visits after the operation were to pay installments of the fee due defendant, that he did not advise the wearing of a suspender but of a truss, that plaintiff was cured by the operation and never complained at any subsequent visit until the last one,

147 App—31

when he called defendant's attention to a small protuberance or swelling of the groin which was of no consequence, and defendant told plaintiff he would open it on plaintiff's next visit, but there was no other visit. From the latter part of March to the end of April, plaintiff was able to work only from three to five days a week, he said, and by May was unable to work any, had to take to his bed and the waxy fluid had moved around to the outside of his stomach. He called a physician, Dr. Fuchs, who prescribed a powder to relieve pain; plaintiff was taken to the city hospital on May 7th, on his arrival there was found to be suffering from peritonitis or inflammation of the peritoneum and was immediately operated upon; he was then emaciated, was vomiting a dark-brown fluid, his abdomen was distended, and there was a partial obstruction of the bowel due to the adhesion of the intestines to the wall of the abdomen on the right side, so as almost to prevent the passage of fecal matter. This was strangulation of the bowels and not strangulated hernia. Plaintiff was cut open a little below the hernia which existed at the time, black spots as large as a finger-tip were found on the bowels, and the physician who performed the operation, Dr. G. W. Shanklin, testified he discovered on May 7th, near the hernia, a mass of paraffine the size of a pigeon's egg, but did not know what it was, nor did he interfere with it then, because he was intent on relieving the peritonitis. Plaintiff recovered from that disease completely and on June 6th, Dr. Shanklin operated on him for hernia. The operation consisted of cutting into the belly by the side of the hernia, placing the hernia sack back in its natural position and closing the orifice it had protruded from. During the second operation the surgeon examined the lump in plaintiff's groin, found the tissues matted together and small particles of paraffine scattered through the tissues, most of it being in the muscles, it having gone through the muscle covering to some ex-

tent, but not into the peritoneum. This expert testified there were many causes for peritonitis, such as a blow on the abdomen or the extension of inflammation from the appendix where inflammation may be set up by germs or particles of food lodging; that a foreign object in contact with the peritoneum inflames it and the inflammation in plaintiff's peritoneum might have occurred from the paraffine; "it was in a position where inflammation might have occurred from the contact of the paraffine with the peritoneum." This question and answer are in the witness' testimony:

"Q. Now, Doctor, if the paraffine pressing against the peritoneum caused the peritonitis, you cut in there at this first operation and did not remove the cause, that is the inflammation resulting from the pressure of the paraffine; how came you to say that the paraffine was the cause if he got well? A. I didn't say that was the cause."

He said the acute condition of plaintiff found when he first operated, might have been caused by the paraffine or by something else; that the paraffine was there in evidence and the appendix was not diseased. He also said he had heard of the employment of the method of treatment used by defendant to reduce hernia, but was not familiar with it and it was not the usual or ordinary method of treating hernia. At the second operation Dr. Shanklin found the hernia orifice unclosed and part of the bowel down, which might have caused strangulation of the bowel, and there was a mass of paraffine there. Defendant testified plaintiff looked sick when he first visited defendant and was suffering from inguinal hernia; defendant told plaintiff he (defendant) could effect a cure in half an hour, treated plaintiff, cured him in thirty minutes and discharged him as cured; the treatment (i. e., the medicine) defendant administered could not go into the abdomen and did not come in contact with the peritoneum; he had administered the same treatment to hundreds of people and

had never known, in his own practice or that of other physicians, peritonitis to result from it; the treatment was used in Chicago, Cincinnati, and in Vienna, Austria, where it was developed about nine years ago by Dr. Gerizunde; it had been very successful and defendant had heard of it being used recently in St. Louis by other physicians, but at the time he treated plaintiff he did not know that it was used by other physicians; the fluid injected into plaintiff had been rendered absolutely aseptic; defendant would not say he cured every case of hernia he had ever treated, but he had cured many cases. Dr. Alfred Luebbers testified he was a regular physician, a graduate of Marion Sims College, practiced in the allopathic school, had been practicing since 1896, knew defendant and had assisted him in several operations for hernia. He described the method of treatment as it has been described supra, said he was present when defendant operated on plaintiff and before plaintiff left the office the witness and defendant tested him to see if the hernia was cured; the test was by putting a finger against the abdomen and having the patient cough; if the bowel came down under these circumstances, the hernia was not cured; if it did not, the hernia was cured; plaintiff was found to be cured; witness said there were other methods of treating hernia, both by surgery and by injections of fluids other than the one defendant used; he did not know of any probability of a pad formed by the paraffine giving way; there was no possibility of the substance passing through the abdomen; most physicians in treating hernia used surgical operations. Three witnesses testified for defendant they had been cured of hernia by the treatment administered to plaintiff and no harmful result followed. The court declined all the requests for instructions preferred by both parties, including one by defendant for an order to return a verdict in his favor, and in lieu of the requests gave instructions of the court's own motion. The substance

of the first two was that if defendant held himself out as expert in the treatment of hernia and rupture and undertook to treat plaintiff for hernia, it was defendant's duty to exercise ordinary care and skill as explained in the instructions, and if the jury believed the method and manner of treatment used by defendant while treating plaintiff were "not used by physicians and surgeons of ordinary skill and care, and as a direct result of the use of such method the plaintiff suffered the injury of which he complains, then your verdict should be for the plaintiff;" that ordinary skill and care, in the sense of the instructions, meant such skill and care as were used by physicians and surgeons of ordinary ability in the same locality or similar localities and under the same or similar circumstances, and failure to exercise such skill and care in any given case constituted negligence; that if defendant undertook to treat and cure plaintiff and did so successfully and thereafter plaintiff suffered from peritonitis from some other cause not connected with defendant's treatment, then plaintiff was not entitled to recover; which charge, in effect, was the same as one requested by defendant and refused. The court further instructed if the jury found the injury complained of might be ascribed to one or the other of several causes not arising out of or caused by any negligence or want of skill on the part of defendant, the verdict should be in his favor; that if different methods of treating hernia were recognized as proper by physicians and surgeons of ordinary skill, it was not negligent in defendant to have used any method so recognized, and the fact some other method existed did not tend to prove defendant was negligent, "provided you find from the evidence that the method actually used was proper and recognized as such by surgeons of ordinary skill and education;" that to recover plaintiff was bound to establish by the greater weight of testimony: First, defendant did not act with ordinary skill as explained in the in-

structions; second, such failure to exercise ordinary skill resulted in the injury to plaintiff of which he complains; third, said injury was directly caused by failure to use ordinary skill and not from some other cause. If the issues were found for plaintiff, the jury were told to take into consideration in estimating his damages the physical injury inflicted, whether temporary or permanent, and the bodily and mental anguish endured, and assess the damages at such sum as would compensate him for said injury, together with the suffering caused by it. A verdict was returned in plaintiff's favor and awarding him damages in the sum of $2000.

GOODE, J. (after stating the facts).—Though the petition avers defendant advertised he could cure hernia in thirty minutes without cutting and plaintiff employed him to treat and cure plaintiff and defendant undertook to do so, it does not declare on the alleged promise, say the hernia was not cured nor ask damages for failure to cure it. The gravamen of the case presented is "defendant so negligently and unskillfully conducted himself in and about treating said hernia, that through and by reason of his negligence and unskillfulness, plaintiff was made exceedingly ill and his life placed in danger, so that it became necessary for him to go to a hospital and undergo a painful and dangerous surgical operation to preserve his life and restore him to health; . . . that defendant in his attempt to cure plaintiff, negligently and carelessly injected into the parts affected a preparation which formed a waxy substance and resulted in an inflammation of the intestines, necessitating an operation for the saving of the life of plaintiff."

Error is assigned for the court's refusal to direct a verdict for defendant, the contention being there was no proof his treatment of plaintiff was improper, or, if it was, that it induced the peritonitis plaintiff suffered from months afterward. The affirmative of those

issues is supported by scanty evidence and we wish more light had been shed upon the case by the testimony of experts. Defendant and another physician who aided him in the first treatment of plaintiff gave testimony which tended to prove the method was both proper and skillfully administered. Taken in its entirety the testimony of Dr. Shanklin, who was the only expert introduced by plaintiff, points rather weakly to the conclusion that the paraffine in the abdominal cavity caused the peritonitis. Doubt is cast on this theory by the paraffine not being in contact with the peritoneum, and the complete cure of the peritonitis before the paraffine was removed. Moreover, the injection of it, if a regular and approved method of treating the ailment, would not necessarily lay defendant liable even if it induced the peritonitis, for untoward results sometimes follow the most scientific surgery. On the whole more evidence on the main issues of fact is desirable, but as there was proof the peritonitis might have been caused by the wax, and some evidence tending to prove the injection of it was not a right way to treat hernia, we endorse the submission of the case to the jury.

In one aspect the instructions were too favorable to defendant and in another were likely to mislead the jury to his detriment. Because defendant held himself out as an expert in the treatment of hernia, the law required him to treat plaintiff with the skill and care commonly shown by physicians and surgeons in St. Louis and cities in advance or abreast of it in the practice of medicine and surgery, who devote special study to the treatment of the disease; that is to say, the proficiency and skill of hernia specialists; not meaning by this designation only physicians who treat that disease exclusively, but also those who by special study and experience probably have acquired more accurate knowledge of the right methods of treatment than is possessed by general practitioners of medicine. [5 Thompson, Negligence, section 6714; McMurdock v.

Kimberlin, 23 Mo. App. 523, 531; Rann v. Twitchell, 20 L. R. A. (n. s.) 1030.] And in ascertaining whether the requisite skill and care were employed in a given case, contemporary knowledge of the ailment and how to relieve it are considered. [Rann v. Twitchell, supra; Gillette v. Tucker, 67 Oh. St. 106, 93 Am. St. Rep. 639, 660, note b.] If expert practitioners of defendant's school concurred in opinion about the right method of treating hernia and defendant adopted a method not recognized as sound, then, according to courts which have passed on the question, his conduct should be regarded as an experiment which renders him liable if it injured plaintiff in the way alleged; that is, caused peritonitis. [Carpenter v. Blake, 60 Barb. 488; Patten v. Wiggin, 51 Me. 594; Jackson v. Burnham, 20 Colo. 532, 1 Colo. App. 237; Pike v. Honsinger, 155 N. Y. 201, 210; Allen v. Voje, 114 Wisc. 1; Whitesell v. Hill (Ia.), 37 L. R. A. 830, 836, note 6.] But if defendant's system of treatment was recognized as proper, then, though there were other systems recognized as proper, he cannot be convicted of negligence if he made use of the one he deemed most suitable for plaintiff's case. [Wells v. Medical Assn., 9 N. Y. S. R. 452.] In such a condition of medical science, the question of defendant's responsibility would turn on whether he administered the remedy preferred by him with the degree of care and skill required of a person holding himself out as an expert.

What we are dubious about is whether the evidence for defendant conduced to prove the treatment he used was recognized by the experts of his school as proper for the relief of hernia. That it was of comparatively recent origin ought not, *ipso facto*, to put it in the class of innovating experiments, so as to lay the defendant liable for a bad result, even though he displayed reasonable skill and care in the manner of applying it. This is true because some of the most approved systems of treatment, like antitoxin for

diphtheria,, met with general acceptance by the medical profession a few years after their discovery. We conclude there was enough evidence for defendant on this point to remit it to the jury.

The theory carried through the instructions was that defendant was only required to possess and exercise the skill and care exercised by physicians of ordinary skill and ability in localities like St. Louis, whereas we think he was bound to exercise the care of a specialist, and that the propriety of his treatment was to be determined with reference to the practice and approval of specialists. It may be the system was recognized, approved and used by physicians who had kept pace with scientific progress in relieving hernia, but "was a method or manner of treatment not used by physicians and surgeons of ordinary care and skill," as the first instruction reads.

We have not found any proof in the record plaintiff was permanently injured by defendant's treatment and unless on another trial there is such evidence, it would be well to omit in the instruction on the measure of damages, reference to permanent injury.

The judgment is reversed and the cause remanded. All concur.