## JOHN L. SPAIN, Respondent, v. EDWARD J. BURCH, Appellant.

**Springfield Court of Appeals, March 3, 1913.**

1. **PHYSICIANS AND SURGEONS: Malpractice: Burden of Proof.** In a suit against a physician for alleged malpractice, the burden is on the plaintiff to prove affirmatively the alleged negligence complained of. The fact that the patient's death occurred during the time of administering the anæsthetic will not alone support a verdict for the plaintiff.

2. ————: **Negligence: Question for the Court.** It is for the court and not for the jury to say whether any facts have been proven from which negligence may be reasonably inferred.

3. **NEGLIGENCE: Evidence: Province of Jury.** Where an issue of fact is contraverted and oral evidence must be relied upon to show. that fact, the jury has a right to find against that oral testimony, though it is not contradicted. But where the burden is on the plaintiff to show the failure to do any act and the defendant's evidence that he did do it is uncontradicted, this doctrine cannot be carried to the extent that the jury may consider their disbelief of the defendant's evidence as supplying the lack of the affirmative evidence required of the plaintiff.

4. **PHYSICIANS AND SURGEONS: Medicines and Means. Employed: Care Required in Use of Same.** It is not enough that a physician possesses ordinary skill and that he uses proper and approved medicines and appliances in treating the patient, but in treating a particular case he must use in that case such reasonable skill and diligence in applying the means and administering the medicine used.

5. ————: **Evidence: Error in Judgment: Lack of Reasonable Care.** To sustain a charge of unskillful or negligent treatment of a patient against a physician or surgeon, it is not sufficient to show that he did not treat the patient in the mode or use those measures, which, in the opinion of others, even medical

men, the case required; such evidence tends to prove errors of judgment for which he is not liable as much as the want of reasonable care and skill for which he may be responsible.

6. ————: Anaesthetics: Negligence in Administering: Evidence. On the question of the proper or improper use of an anaesthetic by a physician, it being shown that dentists use that particular anaesthetic more often than physicians and are often more proficient and skilled in its use than the ordinary medical practitioner, it is proper to admit as evidence the usual and customary methods of dentists skilled in that respect.

7. ————: Anaesthetics: Examination of Patient Prior to Use. The evidence in this case is *held* to be insufficient to carry the question to the jury whether or not the physician was negligent in failing to make a proper examination of the physical condition of the patient prior to administering the anæsthetic.

8. EVIDENCE: To be Taken as an Entirety. The entire evidence in a case must be taken together and the plaintiff is entitled to the benefit of evidence introduced by the defendant which may be in his favor.

9. ————: Negligence: Pleading and Evidence Must Conform. In an action against a physician for malpractice in administering an anæsthetic, where the petition does not allege as a ground of negligence that the physician did not properly diet the patient before administering the anaesthetic, evidence tending to prove that fact should be excluded.

Appeal from Jasper County Circuit Court, Division Number Two.—*Hon. David E. Blair,* Judge.

REVERSED AND REMANDED.

*McReynolds & Halliburton* for appellant.

(1) In an action for malpractice plaintiff must recover, if at all, in accordance with his allegations. The evidence must be restricted within the issues made by the pleadings. 30 Cyc. 1583, par. 7 and note 4; West v. Martin, 31 Mo. 375. (2) A physician and surgeon is only required to possess and use the skill and care which is possessed and exercised generally by physcians of ordinary care and skill in similar communities. Hales v. Raines, 146 Mo. App. 241; West

v. Martin, 31 Mo. 375; Robertson v. Wenger, 131 Mo. App. 224; Ghere v. Ley, 128 Mo. App. 362; Whitsell v. Hill, 37 L. R. A. —. (3) In an action against a physician for malpractice, no presumption of negligence or want of skill can arise from the fact that defendant failed to effect a cure. The burden of proof in such case is on the plaintiff to show physician's want of reasonable skill, care and diligence in his treatment of the case, and also that the injury complained of resulted from a failure to exercise these requisites. 30 Cyc. 1584, and notes 48, 49 and 50; also cases cited under points 2 and 3; Sims v. Parker, 41 Ill. App. 284; Pettigrew v. Lewis, 46 Kan. 78, 26 Pac. 458. (4) The fact that Mary Francis Spain died on the operating table, after having been given an anaesthetic, is not evidence of any negligence on the part of defendant or Dr. Webster. A physician is not a warrantor or insurer of a case and is not to be tried by the result of his remedies; nor can negligence be implied from failure to effect a cure. Logan v. Field, 75 Mo. 601; 30 Cyc. 1573, par. 7 and notes 35 and 36; Buncey v. Pinkham, 29 Neb. 350, 45 N. W. 694; Craig v. Chambers, 17 Ohio St. 253. (5) A physician and surgeon, in putting a patient under the influence of an anaesthetic is only bound to look to natural and probable effects, and is not liable for results arising from the peculiar condition or temperament of a patient of which they had no knowledge. Bogle v. Winslow, 5 Phila. (Pa.) 136; Baker v. Welsh, 144 Mich. 632, 108 N. W. 94, 7 L. R. A. (N. S.) 612. (6) The burden of proof is primarily upon a plaintiff to prove the negligence charged. It is not enough to show an accident and an injury. A casual connection must be established between the accident and the negligence charged, in order to make out a case for the jury. Warner v. Railroad, 178 Mo. 133; Wilkerson v. Railroad, 140 Mo. App. 306, 124 S. W. 543; Jackson v. Mining Company, 151 Mo. App. 644;

Trigg v. Land and Lumber Co., 187 Mo. 227; McGrath v. Transit Co., 196 Mo. 97; Smart v. Kansas City, 91 Mo. App. 586; 9 Ency. of Ev., 833, par. 2, n. 40.

*H. T. Harrison* and *R. A. Mooneyham* for respond ent.

(1) The general rule of law is that a physician or surgeon or one who holds himself out as such, when he accepts an employment to treat a patient profes- sionally, must exercise such reasonable care and skill as is usually possessed and exercised by physicians or surgeons in good standing of the same system or school of practice in the vicinity of his practice, having due regard to the advanced state of the medical and sur- gical science at the time. This rule is elementary and defendant's learned counsel admits it to be the rule, therefore the citation of authorities is unnecessary. Robertson v. Wenger, 136 Mo. App. 224; Hales v. Rains, 146 Mo. App. 241. (2) It is true, however, that certain principles of medicine are so well known and universally received that to ignore them would be negligence in law, no matter what the practice might be in the particular school to which the physician might belong. Barrows on Negligence, pp. 377, 378; Nelson v. Harrington, 40 N. W. 228; Longan v. Weltmer, 180 Mo. 322. (3) The liability of a surgeon for error of judgment depends not merely on the fact of his ordinary skill but on whether in treating the case he used such reasonable skill and diligence as was ordi- narily exercised in his profession. West v. Martin, 31 Mo. 375. (4) If expert practitioners of the de- fendant's school concurred in opinion about the right method of treating hernia (in this case about testing the heart and lungs, before administering the anaes- thetic) then according to the courts which have passed on the question of his conduct should be regarded as an

169 Mo. App.—7

experiment which renders him liable, if he injured plaintiff in the way alleged. McClaren v. Grenzfelder, 147 Mo. App. 478; Carpenter v. Blake, 60 Barb. 488; Patton v. Wiggin, 51 Me. 594; Jackson v. Bernham, 20 Colo. 532; Pike v. Housinger, 155 N. Y. 201; Allen v. Voje, 114 Wis. 1; Whitsell v. Hill, 37 L. R. A. (Iowa) 830, note 6.   (5)   A demurrer to the evidence admits as true every fact which the testimony in behalf of plaintiff tends to prove and every inference which may be reasonably drawn therefrom.   Pauck v. Provision Co., 159 Mo. 467; Hach v. Railroad, 208 Mo. 581; Kinlen v. Railroad, 216 Mo. 145; Pitthan. v. Scaithan, 127 Mo. App. 29; Miely v. Railroad, 215 Mo. 567.   (6)   While ordinarily in passing on a demurrer to the evidence the plaintiff's evidence alone should be considered, yet if defendant's evidence aids plaintiff's case, it also is to be taken into account.   Jordan v. Transit Co., 202 Mo. 418.   (7)   The rule is well settled that ''Where an issue of fact is controverted and oral testimony must be relied on to show the fact, the jury has the right to find against the testimony although it is uncontradicted.   Bank v. Hammon, 124 Mo. App. 177; Hunter v. Wethington, 205 Mo. 284.   (8)   The court on appeal will not pass on the weight of the testimony, where the successful party's case is supported by substantial evidence. Hale v. Raines, 146 Mo. App. 232; McCarty v. Transit Co., 192 Mo. 401.   (9)   A party cannot try a case on one theory in the trial court and then change around and argue it on another theory in the appellate court. LaFayette Bldg. Co. v. Kleinhoffer, 40 Mo. App. 338; Walker. v. Owens, 79 Mo. 563; Whetstone v. Stone, 70 Mo. 570; Dunnigan v. Green, 165 Mo. 98; Horgan v. Brady, 155 Mo. 659; Bensieck v. Cook, 110 Mo. 182; Hume v. Hale, 146 Mo. App. 676.

STURGIS, J.—This is a suit for damages for the death of plaintiff's wife, caused as is alleged by the

malpractice of the defendant as a physician in administering to her an anaesthetic. The plaintiff recovered and the defendant appealed, alleging as the chief error that the evidence is not sufficient to support the verdict on either ground of negligence on which the case was submitted to the jury. There were originally two defendants, but as the case was dismissed as to one during the progress of the trial the other defendant, Dr. Burch, will be treated as the sole defendant.

The petition, after stating that the defendant is a physician and surgeon practicing at Carthage, Missouri, alleges that plaintiff's wife, Mary F. Spain, "contracted with the defendant for an operation for hemorrhoids which said operation necessitated the use and administration of an anaesthetic;" that plaintiff's wife underwent an operation including an administration of an anaesthetic through the Teters apparatus, to-wit, nitrous oxide. The grounds of negligence on which the case went to the jury are that the defendant (1) "negligently, unskillfully and carelessly administered the said nitrous oxide through the Teters apparatus by failing to use necessary diligence and skill which in similar cases are required and by carelessly, negligently and unskillfully working and operating and controlling and governing the flow of said nitrous oxide and its component oxygen, by the Teters apparatus;" and also (2) "by negligently and carelessly and for want of diligence and skill failed to make an examination or test of the body or organic functions of the said Mary F. Spain, prior to the operation aforesaid, and for the purpose of ascertaining and learning if the physical condition of the said Mary F. Spain was in a proper state to withstand the necessary strain of the operation and the anaesthetic to be given."

The following facts are clearly shown by the evidence and are practically conceded by both sides. The

defendant was a well educated physician, having been engaged in the practice of his profession for more than twenty years. It was conceded and the jury was instructed that there was no evidence that the defendant did not possess the skill and prudence of an ordinarily careful and skillful member of his profession. The nitrous oxide, spoken of in the petition, is commonly known as "laughing gas" and is one of the safest, if not the safest, anaesthetic known. It is largely and commonly used by physicians and dentists in performing short operations. By the use of this gas alone the patient cannot, at least with safety, be kept in a state of anaesthesia for any considerable length of time. The Teters apparatus, as described by the witnesses, is merely a mechanical device for mixing oxygen with the nitrous oxide in administering the same to the patient. This is accomplished by having jars of each of the gases under pressure connected with a mixing chamber from whence the mixed gases are administered to the patient by means of a tube and hood fitting over the face. The flow of each gas is regulated by stopcocks, which are manipulated by the person administering the anaesthetic. All the evidence shows that the purpose of mixing the oxygen with the nitrous oxide is to make its use more safe and to prolong the period of anaesthesia. The Teters apparatus is one of the comparatively late improvements for this purpose and is used quite extensively in hospitals and by physicians everywhere and its use is becoming more extensive.

It is also conceded that the operation performed was of short duration, not occupying over five to ten minutes. There can be no doubt that the anaesthetic itself was one of the safest and best to be used for this purpose and that the method of administering it was one of the best approved scientific methods.

We recognize the rule, however, that it is not suffi-
cient that a physician possesses ordinary skill and
that he use proper and approved medicines and appli-
ances in treating the patient, but also that in treating
a particular case he must in that case *use* such rea-
sonable skill and diligence in applying or administer-
ing the medicine and means used. [West v. Martin,
31 Mo. 375.] The question to be determined is whether
the defendant did in this particular case use ordinary
skill and diligence in administering the anaesthetic to
the deceased. It is claimed that he was negligent in
not making a proper examination of the physical con-
ditions of the patient, to ascertain whether or not her
physical conditions were such as to make it safe and
proper to administer the anaesthetic to her. On this
point the court, at the instance of plaintiff, instructed
the jury that if you find from the evidence that the
defendant carelessly and negligently failed to make
a proper examination or test of her body and organic
functions before administering the anaesthetic to as-
certain whether her physical condition was such as to
successfully withstand the effects of said anaesthetic,
and that such an examination would have disclosed the
facts to the defendant that she at that time was in
such a physical condition that she could not withstand
the effects of said anaesthetic, and that defendant was
negligent in failing to make such examination under
the facts and circumstances shown in evidence, and
that the anaesthetic was administered without such an
examination, then the jury shall find for the plaintiff.

On a careful reading of the record in this case
we are convinced that there was not sufficient evidence
to carry this question to the jury and that the court
erred in submitting the case on this instruction. The
evidence shows that the wife of plaintiff came to the
office of defendant in the afternoon. The defendant
states that he made a partial examination of her ail-
ment and ascertained that she was not able to with-

stand the pain necessarily caused by making a thorough examination of her condition. He says that he gave her a general examination, including the heart and lungs and entire body, so far as it was practicable to do so; that he discovered nothing abnormal except the anus and the fact that she was very nervous; that there was nothing wrong with her heart or respiration; that she was a robust looking woman. In making this preliminary examination the patient was properly prepared and placed on the operating table with the assistance of a Mrs. Tate, who was employed as an office assistant. He then informed her that it would be necessary in order to make a thorough examination of her ailment that she would have to take an anaesthetic and recommended that nitrous oxide would be the safest. The patient said she would consult her friends and late that evening informed the defendant that she would be at his office about nine o'clock the next morning for that purpose. The operation was performed at the appointed time the next morning, with the assistance of Dr. Webster, called in for that purpose. and Mrs. Tate, the office assistant. It is proper to say however that the so-called operation was in fact nothing more than the making of an examination of the anus by means of a speculum while the patient was under the influence of the anaesthetic. It occupied no more than three to five minutes. Both defendant and Dr. Webster say that the latter made an examination as to the physical condition of the patient just before administering the anaesthetic but, as this is denied by the plaintiff's daughter who was there present, this fact will not be considered in determining whether or not the case should have gone to the jury on the question of failure to make a proper physical examination before administering the anaesthetic.

It is common knowledge that the action of the pulse to a large extent shows the condition of the heart and that the respiration indicates the condition

of the lungs, and in addition to what the defendant says as to his making an examination of the heart and lungs of the patient, it must be evident that a skillful physician, making the examination of the patient which it is conceded that he did do on the afternoon of that day, must have observed and known to a considerable extent the physical condition of the patient in these respects. It is claimed by plaintiff that this more or less casual examination made by the defendant in the afternoon previous to the operation was not sufficient; and that the use of ordinary care and skill demanded a further examination of the condition of the patient on the same morning that the operation was had. There is no contradiction of the defendant as to the nature and extent of his afternoon examination.

The evidence of a large number of dentists and physicians, familiar with and skilled in administering this particular anaesthetic, is to the effect that if a person is in apparent good health that no examination whatever is usual or necessary; that the danger from the use of this anaesthetic is almost a negligible quantity so far as the physical condition of the patient is concerned. This, however, would not prevent the case going to the jury, provided there is any substantial evidence offered by the plaintiff that ordinary skill and diligence demanded a more careful examination or one nearer the time of the operation than that made by the defendant. The only evidence offered by the plaintiff along this line is that of Dr. Manchester. He states, however, that he was not acquainted with the use of nitrous oxide as an anaesthetic, either used alone or in connection with oxygen by means of the Teters process. He said that he had never used it himself and never saw it used by anyone else; he had always used some other anaesthetic, as ether or chloroform; but he admitted that nitrous oxide was probably the safest anaesthetic known and was generally

used for short operation. His evidence on this point is shown by the following questions and answers: "Q. Now, Doctor, I will ask you whether it is proper practice where a physician has seen a patient but once and that was on the day before the operation, and an examination made on that day and no further examination made until the anaesthetic is administered whether or not that is—on the following day, following morning about nine o'clock, whether or not that would be proper practice? A. Well I should certainly have made an additional examination when the patient returned again before administering an anaesthetic at least.

.     .     .     .     .     .     .     .

"Q. I will ask you whether or not it would be good practice, and the use of ordinary skill in ordinarily skillful physicians, to make an examination one day and then the next morning about nine o'clock without further examination, the person not wholly familiar with the Teters apparatus, having used it only seven times before, whether or not it would be good practice to place a person under this anaesthetic known as nitrous oxide without a further examination on the morning of the administration of the anaesthetic? A. I would only say just what I would have done myself in the case. I would have examined the patient very thoroughly the other time, all the physical symptoms. Q. Why would you make the second examination? A. To ascertain whether or not I had been mistaken in my prior examination.

.     .     .     .     .     .     .     .

"Q. Isn't it a fact, the ordinary skillful and careful physician if a patient comes along apparently healthy, looks healthy, for a short examination would ordinarily give nitrous oxide without any examination as to the condition of the heart and pulse? A. I can't answer that because I never used nitrous oxide and I don't know what I would do with that:

. . . . . . . .

"Q. And don't you know as a matter of fact that it is the ordinary and common practice of the ordinarily careful and skillful physicians of the country to give this nitrous oxide gas to patients that are around going about without making any examination at all? A. I don't know. I never used that. Q. You don't know what other doctors do? A. I didn't know it was used much by physicians until recently; usually used by dentists. Q. Used by dentists because it was good for very short operations? A. Yes. Q. And it hadn't been considered heretofore good for long operations? A. No, it hadn't been. Its field is in short examination. Q. You say you don't know what is the practice among physicians about administering that anaesthetic? A. I never saw one of the instruments. Q. With or without an instrument? A. I never yet seen a physician use nitrous oxide.

. . . . . . . .

"Q. Do you undertake to say it would be a practice that would not be ordinarily used by ordinarily skillful physicians who had examined a patient at three or four o'clock in the afternoon, and in apparent good condition, except a rectal trouble, and pulse normal and respiration normal, to put her on the table to give her nitrous oxide the next morning without an examination? A. I don't know what the ordinarily careful—he may not be as careful as he seems to be. I can only tell what I know myself. Q. I am asking you what the ordinary run of physicians would do? A. I don't know what they would do."

It will be observed throughout the examination of this, and also other witnesses, that he was asked and allowed to answer, not as to what ordinarily careful and skillful physicians usually do under a given state of facts, but as to what he individually would do and what *he* thought was proper practice.

"To charge a physician or surgeon with damages, on the ground of unskillful or negligent treatment of his patient's case, it is never enough to show that he has not treated his patient in that mode nor used those measures which in the opinion of others, even medical men, the case required; because such evidence tends to prove errors of judgment, for which the defendant is not responsible, as much as the want of reasonable care and skill, for which he may be responsible." [Leighton v. Sargent, 27 N. H. 460, 59 Am. Dec. 388.]

But waiving this phase of the questions and answers, it is apparent, we think, that the witness did not undertake to say that a second examination was necessary or proper according to the standard of what an ordinarily careful and skillful physician would do. It is doubtful whether under the evidence of this physician it would be negligence for a physician to fail to make any examination whatever, except the necessary and casual observation made by the trained eye and ear of a skillful physician in talking with and observing a patient who comes to him for the purpose of consultation and examination as to some physical ailment, where the use of an anaesthetic was advised and thought necessary. But that is not necessary for decision here.

It is claimed that the evidence of Dr. Powers, introduced by defendant, aids and supplies the necessary evidence to make a prima facie case for plaintiff. Of course if this is true the whole evidence must be taken together and plaintiff is entitled to the benefit of evidence in his favor introduced by defendant. [Jordan v. Transit Co., 202 Mo. 418, 429 (101 S. W. 11).]

But we think the plaintiff did not receive sufficient aid from this source to tide him over the harbor bar.

Dr. Powers testified in chief in answer to a hypothetical question that no second examination was necessary acording to the standard of a reasonably careful and skillful physician. On cross-examination

he was asked if it was not "usual and customary to make the examination on the same day;" to which he answered "not always."

Drawing every legitimate inference from this and like answers and remembering that it would be "usual and customary" not to have made, or had an occasion to have made, an examination of the patient the previous afternoon, thus making an examination at the time more necessary, we think this evidence ought not to be construed to mean that, on the more rare occasions where the physician had already made a comparatively recent examination, he would be required by the standard mentioned to make a second examination.

While the fact that death did occur during the time of administering the anaesthetic to this patient is a fact in this case, yet that fact alone will not support a verdict for plaintiff. There must be a casual connection amounting to negligence between the accident and injury. The burden is not on the defendant to show the cause of the accident. [McClarin v. Grenzfelder, 147 Mo. App. 478, 487 (126 S. W. 817); Wilkerson v. Railroad, 140 Mo. App. 306, 321 (124 S. W. 543); Warner v Railroad, 178 Mo. 125, 133 (77 S. W. 868).]

The burden is on the plaintiff to affirmatively prove the negligence. [9 Ency. Evidence, 833.]

"It is the duty of professional men to exercise ordinary care and skill, and this being a duty imposed by law it will be presumed that the operation was carefully and skillfully performed in the absence of proof to the contrary." [State v. Housekeeper, 70 Md. 162, 16 Atl. 382.]

It is for the court and not the jury to say whether facts have been proven from which negligence may be reasonably inferred. [30 Cyc. 1588, note 85.]

Nor will the fact that the jury had a right to disbelieve the testimony of defendant, as to his having

made on the previous afternoon a careful examination of the organic functions of the deceased, help the plaintiff on this point.

It is true, as plaintiff contends, that where an issue of fact is controverted and oral evidence must be relied on to show that fact, the jury has a right to find against the oral testimony although it is not contradicted. [First State Bank v. Hammond, 124 Mo. App. 177 (101 S. W. 677); Hunter v. Wethington, 205 Mo. 284 (103 S. W. 543).] But this doctrine has not been, and should not be, carried to the extent that, where the burden is on the plaintiff to show the failure to do any act and the defendant's evidence that he did do it is uncontradicted, then the jury may not only disbelieve his evidence but may take such disbelief as supplying the lack of affirmative evidence required of plaintiff.

As in our opinion there is not in the record as now presented sufficient evidence to carry the case to the jury on this ground of negligence, we must at least reverse and remand the case. After a careful reading of the record we are not prepared to say that there is not sufficient evidence to take the case to the jury on the other ground of negligence, to-wit, in not using due and ordinary care in administering the anaesthetic and in watching and caring for the patient while administering and while she was under its influence.

In view of another trial we think proper to say that where, as in this case, physicians and dentists are alike used as experts on the question of the proper use of this anaesthetic, and it is shown that dentists use it more often than physicians and are often more proficient and skilled in its use than an ordinary practitioner of medicine, that the usual and customary methods of using it by dentists skilled in that respect is a legitimate source of inquiry and such evidence should not be excluded.

The skill and proficiency by which a physician administering an anaesthetic is to be judged is not to be measured by the usual and ordinary skill possessed by other physicians only, but extends to that possessed by other persons whose occupation and study give them an equal or better knowledge of the right methods of its use than is possessed by a general practitioner of medicine. [McClarin v. Grenzfelder, 147 Mo. App. 478, 487 (125 S. W. 817).]

Also, the present petition can hardly be construed as alleging as a ground of negligence that defendant did not properly *diet* the patient before administering the anaesthetic and evidence tending to prove that fact should be excluded. [30 Cyc. 1583 and note.]

Other matters are discussed by counsel which are not here mentioned because not likely to occur at another trial.

The cause is reversed and remanded. All concur.