STATE of Missouri, Respondent,

v.

Bill Frank TAYLOR, Appellant.

No. 51485.

Supreme Court of Missouri,
Division No. 1.

Jan. 8, 1968.

**634**

Norman H. Anderson, Atty. Gen., Jefferson City, Charles C. Hatley Asst. Atty. Gen., New Madrid, for respondent.

Richard E. Graulich, Kansas City, for appellant.

SEILER, Judge.

This is an appeal from a judgment and sentence of three years, following conviction by a jury on an indictment charging the defendant with knowingly receiving stolen property, specifically, an eight cylinder Chevrolet motor, serial number S–185501, belonging to a car dealer, Van Auto Sales, Inc.

The issue is whether the state proved the required guilty knowledge on the part of defendant. The statute, Sec. 560.270 RSMo 1959, V.A.M.S., makes punishable the buying or receiving of stolen property by the defendant, "knowing the same to have been stolen".

The state's evidence was along these lines: On March 5, or 6, 1964, Van Auto Sales, Inc., discovered one of its new cars, a 1964 Chevrolet Impala two door sedan, serial number 41847S185501, had been stolen from its lot.[1] The shell of the car, stripped of its engine, transmission, drive shaft, differential gears, tires, wheels, radiator, axles, radio and wheel hubs was located by the Kansas City, Kansas police on March 6, 1964, near the state line, under the Intercity viaduct. The insurance company paid the theft loss, took title from the car dealer, and sold the shell to the highest salvage bidder, one Bill Edwards, who operated a filling station and salvage business. April 17, 1964, defendant bought the shell from Edwards for $1575 and a front end on a used car, worth about $75. The evening of the day of the purchase, Edwards and a friend, Dan Strong, went to defendant's place of business, known as Carl's Hollywood Muffler Shop, 2743 McGee, Kansas City, Missouri, to get the money and pick up the front end. In the course of showing them around the premises, defendant showed them a 1956 Chevrolet convertible, and said that the engine and transmission in the 1956 convertible came out of the 1964 Chevrolet; that he had purchased the convertible "from a colored fellow in Kansas City, Kansas", for $450. There was no mention in the conversation, however, of the 1964 Chevrolet as having "previously been stolen". Edwards testified the engine in the 1956 Chevrolet was a Chevrolet V–8, either a 283

---

1. The evidence was that the serial number appears on a plate on the left front door post. The "4" stands for the year built (1964); "1847" is the model number. "S" means built in St. Louis. The last six digits are the vehicle identification number, which is also stamped on the motor block.

cubic inch or a 327 cubic inch and could have been anything from a 1955 to a 1964 engine. The engine looked new, not dirty.

An F.B.I. agent, O. T. Handwerk, testified he investigated the theft of the 1964 Chevrolet both in Kansas City, Missouri and Kansas City, Kansas. March 26, 1964, he conducted an investigation in regard to the motor number on a 1956 Chevrolet convertible registered in Kansas to Edward Dodds, Kansas City, Kansas. There was no identification number on the motor. "There was markings where the identification number normally is placed on the motor, which indicated that it had been altered to the extent that some numbers had been removed." He did not know what became of this car. He questioned two men, Edward Paul Dodds and Leonard Wade Scaife, about the theft of the 1964 Chevrolet.

Defendant rebuilt the 1964 Chevrolet and sold it, June 23, 1964, to the aforesaid Van Auto Sales, Inc., for $2300. Shortly after the purchase, the office girl at Van Auto Sales discovered the serial number was the same as on the car stolen from their lot. On June 27, 1964, Van Auto Sales sold the car to Arthur J. Dunham, who was still driving it at time of trial. On July 2, 1964, the Kansas City police made a physical inspection of the car and took photographs. The car had an identification plate on the left front door post, No. 41847S185501, and the number on the engine block was S185501.

An officer, Donald Wienberg, from the Auto Theft Bureau of the Kansas City, Missouri, police department, inspected the 1964 Chevrolet a few days after Dunham purchased it. The officer said the engine was a 327 cubic inch and that he saw nothing "on this serial number that indicated to me that this was not a factory job", referring to the way the numbers were stamped on the engine block. The transmission in the car was not original equipment; it had a 1962 case, but someone had placed a 1963 Corvette serial number on it. This witness also testified that the transmission from the 1964 Chevrolet was in Kansas, but he did not know exactly where.

Defendant's evidence was as follows: In addition to Carl's Hollywood Muffler Shop at 2743 McGee, defendant also operated Jackson County Motors, a used car business, at 7500 Prospect, both in Kansas City, Missouri. Defendant testified he bought the 1956 Chevrolet convertible from Edward Dodds on April 8, 1964, for $500, paid by a Carl's Hollywood Muffler Shop check, exhibit 12, on which defendant had noted "Mtr. number backwards,—CV 14375—56 Chev. Conv. Idn. no. VC56S014375". He said Dodds came to his place approximately four days earlier, asking if he were interested in buying the car, at which time defendant offered $300. Dodds was back a couple of times before the deal was closed. Before he bought, defendant looked at the engine and noticed the "number seemed to be stamped on there backwards, plus the fact that it was white silvery looking like they might have had acid on the motor", and this, he said, together with the fact he had noticed in the paper about a week before where Dodds "had been picked up in Kansas for investigation", prompted defendant to go "into the office and called the Kansas City, Kansas Police Department and it was clear. They had the car and they had released it". Defendant talked to Lt. Hall. At the time of purchase defendant received a Kansas motor vehicle title for the 1956 Chevrolet made out to Edward Dodds, exhibit 13. The application on the Kansas title is dated February 26, 1964. The certificate of title was issued and dated March 6, 1964.

Defendant and his mechanics testified about rebuilding the 1964 Chevrolet, using the engine from the 1956 Chevrolet convertible (which they said had around 15,000 to 20,000 miles wear) and obtaining other parts from various sources. He said he had approximately $2700 in the rebuilt car. Defendant admitted that he ground off the engine number CV 14375 and in its place stamped the number S185501, which he said

he took from the serial number plate on the door post on the 1964 Chevrolet. He said he wanted a number "that had to do something (sic) with the car" and also to make it more difficult for a prospective purchaser to prove that it was not a 1964 engine.

Defendant denied telling Reynolds and Strong that he had the engine or transmission from the 1964 Chevrolet. He testified he did not believe the engine in the 1956 Chevrolet was stolen. When questioned as to whether he knew Dodds had been picked up for theft of the 1964 Chevrolet, defendant answered, "I still don't know that he has been."

Defendant's mechanic testified that defendant had customers interested in high performance engines, but that the motor in the 1956 Chevrolet did not have a head, camshaft, carburetor or pistons of the high performance type.

■ As stated earlier, the issue is whether the evidence shows the required guilty knowledge on the part of the defendant. In deciding this, there are several well established rules to keep in mind as follows: Many cases have held guilty knowledge requires knowledge on the part of the accused of the stolen character of the goods at the time he received them.[2] This means actual knowledge must be proved and found, not mere negligence in failing to know, not what a reasonably prudent man might know or believe, not facts which would put a reasonably prudent man on guard, although of course the knowledge which defendant possessed may be shown by circumstances.[3] And the mere fact of

possession of the goods by the defendant raises no presumption defendant knew the property had been stolen by another.[4]

■ At first glance, defendant's statement to Reynolds and Strong that the engine and transmission from the 1964 Chevrolet were on the 1956 Chevrolet convertible seems incriminating. But the element of receipt of the engine knowing that it was stolen is not supplied by this statement of defendant, because there is no evidence that defendant knew the 1964 Chevrolet was stolen. There were no suspicious circumstances proved surrounding the acquisition of the 1964 shell by defendant. There is no evidence that Edwards informed defendant, or that defendant was otherwise apprised of the fact, that the 1964 Chevrolet Impala had been stolen from Van Auto Sales. There is no circumstantial evidence from which this could be reasonably inferred.

Somehow, by means not shown, the engine taken out of 1964 Chevrolet apparently shows up in the 1956 Chevrolet convertible which defendant buys from Dodds. There was no evidence to show defendant was aware the F.B.I. agent had questioned Dodds about the theft of the 1964 Chevrolet. There is no proof that defendant dealt with Dodds in the dark of the night or in a furtive manner or that defendant attempted to hide the 1956 Chevrolet after he got it. He paid what would appear to be a reasonable price, $500, in 1964 for a 1956 Chevrolet convertible. Certainly there was no evidence he bought it at a suspiciously low price.

2. State v. Kelly (Mo.Sup.) 365 S.W.2d 602, 606; State v. Harris (Mo.Sup.) 313 S.W. 2d 664, 668; State v. Hicklin, 358 Mo. 1016, 218 S.W.2d 564, 565; State v. Ham (Mo.Sup.) 104 S.W.2d 232, 233; State v. Park, 322 Mo. 69, 16 S.W.2d 30, 35; State v. Capotelli, 316 Mo. 256, 292 S.W. 42, 44; State v. Smith, 37 Mo. 58, 68; State v. Woodson, 175 Mo.App. 393, 162 S.W. 327, 328.

3. State v. Day, 339 Mo. 74, 95 S.W.2d 1183, 1185; State v. Henderson (Mo.

Sup.) 231 S.W. 596; State v. Weisman (Mo.Sup.) 225 S.W. 949, 950; State v. Cavanagh (Mo.Sup.) 225 S.W. 678; State v. Ebbeller, 283 Mo. 57, 222 S.W. 396, 397.

4. State v. Ham, supra; State v. Day, supra; State v. Lippman (Mo.Sup.) 222 S.W. 436, 441; State v. Richmond, 186 Mo. 71, 84 S.W. 880, 883-884; State v. Coppersmith, 231 Mo.App. 711, 105 S.W. 2d 991, 994.

We have looked at exhibit 13, the Kansas title in the name of Edward Dodds, Jr., on the 1956 Chevrolet and exhibit 12, the $500 check, made out to Dodds in payment for the car. Dodds' signature appears in two places on the title and once in the endorsement on the check. While we do not pretend to be handwriting experts (and there was no expert testimony on the subject at the trial), the signatures appear to be substantially alike. The check is stamped "Paid" by the bank April 8, 1964. As noted above, the application for the Kansas title on the 1956 Chevrolet is dated February 26, 1964, which was before the theft of the 1964 Chevrolet. The title itself was issued and dated March 6, 1964, which was either the same day as or the day after the theft of the 1964 Chevrolet. All in all, therefore, there does not appear to be anything suspicious or sham about these documents.

It is true defendant knew Dodds was "under investigation", but there is no evidence defendant knew for what Dodds was being investigated. There was no evidence Dodds was an ex-convict or bore a bad reputation. As stated earlier, defendant noticed the appearance of the motor and engine number, but called Lt. Hall at the Kansas City, Kansas Police Auto Theft Bureau and was told that the car was clear and they had released it (Lt. Hall unquestionably was known to the F.B.I. agent and the Kansas City, Missouri police. It would appear the state could easily have checked on this assertion of defendant). Whatever was the appearance of the motor and number of the 1956 Chevrolet, it seems to have passed the scrutiny of the F.B.I. agent and the Kansas City, Kansas police department without the vehicle being held or classified as a stolen car. We do not believe, therefore, that the appearance of the engine can be said to have charged defendant with knowledge that it was stolen property.

■ Does the fact that the defendant altered the motor number constitute proof of guilty knowledge? Defendant admitted altering the motor number. He said his purpose was to deceive the customer into believing the motor was connected with the 1964 car and was of the same year. This undoubtedly did not endear him to the jury. The jury evidently disbelieved his explanation. But in a criminal case, where defendant is presumed to be innocent and where the burden of proof on the state is greater than that on the plaintiff in a civil case, is the effect of disbelief of defendant's explanation the equivalent of proof to the contrary? We do not believe that defendant's failure to explain satisfactorily to the jury permits an inference of guilty knowledge on his part at the required time which will take the place of substantive proof. Certainly in civil cases the effect of disbelief is not proof of the opposite. See Zarrillo v. Stone, 317 Mass. 510, 58 N.E.2d 848, 849, stating, "On the other hand, mere disbelief of testimony is not equivalent to proof of facts to the contrary"; Cruzan v. New York Central & H. R. R. Co., 227 Mass. 594, 116 N.E. 879, 880, stating, "Mere disbelief of denials of facts which must be proved is not the equivalent of affirmative evidence in support of those facts.", and Eckenrode v. Pennsylvania R. Co. (C.C.A. 3rd) 164 F.2d 996, 999, aff. 335 U.S. 329, 69 S.Ct. 91, 93 L.Ed. 41: " * * * But a belief that testimony is false will not support an affirmative finding that the reverse is true. * * " In Moulton v. Moulton, 178 Minn. 568, 227 N.W. 896, 897, the court said:

" * * * The court could not find a fact necessary to be proved, namely, that there was no debt, as to which there was no affirmative testimony, by a claim that the negative testimony was unworthy of belief. This is the holding of the cases throughout. * * * "

Professor Edmund Morgan, writing in 59 Harv.L.R. 481, at 558 says: "It seems to be well settled that disbelief of his testimony as to a material fact is not the equivalent of positive testimony to the contrary."

This has long been the rule in Missouri in malpractice cases. In Spain v. Burch, 169

Mo.App. 94, 108, 154 S.W. 172, 176, the court said:

"* * * But this doctrine has not been, and should not be, carried to the extent that, where the burden is on the plaintiff to show the failure to do any act, and the defendant's evidence that he did do it is uncontradicted, then the jury may not only disbelieve his evidence, but may take such disbelief as supplying the lack of affirmative evidence required of plaintiff."

In Fausette v. Grim, 193 Mo.App. 585, 186 S.W. 1177, the court said:

"* * * As said in Spain v. Burch, 169 Mo.App. 108, 154 S.W. 172, plaintiff cannot rely upon the jury's right to disbelieve defendants' testimony as to conditions to take the place of her affirmative proof that the advising of the operation was negligent."

To the same effect is Nevinger v. Haun, 197 Mo.App. 416, 196 S.W. 39, 41.

See, also, State v. Elsberg, 209 Minn. 167, 295 N.W. 913, where it was argued on appeal, that since the jury must have found in order to convict that defendant's testimony, in which he denied any conversation with one Bennetts in regard to certain payrolls in a case involving false auditing and payment of highway claims, was false, that this therefore supplied the necessary corroboration required by the Minnesota law before defendant could be convicted on the testimony of his accomplice, Bennetts. The court rejected this, saying at 295 N.W. 1. c. 918:

"* * * So far as we can find, however, no case has gone so far as to hold that the mere fact that the jury does not believe the accused's denial of guilt and considers it false constitutes sufficient evidence of fraudulent conduct on accused's part to support the evidence of an accomplice or constitutes additional evidence against the accused. * * *"

█ It is the duty of the state to prove guilty knowledge on the part of defendant, not the duty of the defendant to prove he had no such knowledge. Defendant did not convince the jury of his defense, but this does not establish guilty knowledge on his part or amount to some sort of admission of guilty knowledge sufficient to make a submissible case against him in the absence of substantive proof of the elements of the offense. If so, no defendant, no matter how innocent, could take the stand without fear that if the jury should fail to accept his explanation or defense and find against him, the fact they did not believe him would, if this view were to prevail, be treated as supplying a missing link in the state's case and as independent evidence of a fact otherwise unproved, so that his conviction would be upheld even if the state had failed to make a submissible case on some material aspect denied by him in his testimony. If disbelief operates as proof, then the jury may always find on any issue unfavorably to a defendant who offers evidence favorable to himself, despite lack of other evidence on the issue. This is not the law. See Boatmen's Savings Bank v. Overall, 16 Mo.App. 510, 515–516, where the point is clearly made thus:

"* * * We find no evidence in the record to support this instruction, unless we can assume as a legal proposition that a jury may, when a fact is asserted by a discredited witness, not only disbelieve him, but consider his assertion of one fact as affirmative testimony of another fact diametrically the reverse. This we must decline to do."

Accord: Shoninger v. Day, 53 Mo.App. 147; Citizens Bank of Bowling Green v. Moorman, 38 Mo.App. 484, 488.

█ The effect of disbelief by the jury of the defendant's testimony is, of course, persuasive in the jury's arriving at their verdict, but it is not probative and does not constitute substantive proof on a material issue not theretofore proved. The fact is that upon the somewhat bizarre record before us, defendant's actual knowledge with respect to the engine being stolen at the time he bought or received it remains a

matter of speculation and conjecture, not stronger than a suspicion of guilt, and this, of course, is not sufficient.

The judgment is therefore reversed, but since we cannot conclude on the record before us that it would be impossible for the prosecution to make a submissible case against the defendant,[5] the cause should be remanded for a new trial if the prosecution is so advised, rather than reversed outright.

Reversed and remanded.

HENLEY, P. J., concur.

STORCKMAN, J., concurs in result.

---

5. It does not appear, for example, what light, if any, Edward Dodds could throw on the matter if the state were to produce him as a witness.