PERRY NEVINGER by Next Friend, Respondent, v. B. O. HAUN, Appellant.

St. Louis Court of Appeals, June 6, 1917.

1. **DENTISTS: Malpractice: Proximate Cause.** In an action against a dentist for an infection of plaintiff's gum, alleged to have been caused by instruments used by defendant in attempting to extract his tooth, *held* that, to entitle plaintiff to recover, it devolved upon him to adduce substantial evidence tending to show negligence on defendant's part with respect to sterilizing the instruments used and that, as a direct and proximate result of such negligence, his gum became infected.

2. ———: ———: ———: Sufficiency of Evidence. In such case, it appearing that, prior to plaintiff's visit to defendant, his mouth was in bad condition and his teeth were decayed, that the human mouth contains many germs likely to cause infection, and, when the teeth are decayed, the danger of infection is greatly increased, that infections may, and commonly do, occur where no instruments are used, and that three different dentists used instruments in plaintiff's mouth within as many days prior to the infection, *held* that the showing made was merely that plaintiff's injury was due to some one of several possible causes, for only one of which could defendant be liable, and that it was a matter of pure conjecture as to which particular one of such possible causes was the *causa causans* of the injury, and hence it is *held* that plaintiff did not make a case for the jury.

3. EVIDENCE: Uncontradicted Evidence: Effect. The doctrine that uncontradicted testimony for defendant does not establish the defense as a matter of law, for the reason that the jury may not believe it, does not mean that, where the burden is on plaintiff to show a failure to perform an act and defendant's evidence that he did perform it is uncontradicted, the jury may not only disbelieve such evidence, but may take such disbelief as supplying the affirmative evidence required of plaintiff.

4. NEGLIGENCE: Proximate Cause. It is axiomatic in the law of negligence that a causal connection must be established between the injury or loss suffered and the negligence with which the defendant is charged.

5. ———: ———: Evidence. A causal connection between negligence and injury may be established by an inference which may be reasonably and legitimately deduced from the facts and circumstances shown in evidence, as well as by direct and positive testimony.

6. ———: ———: Conjecture. If the evidence concerning a causal connection between negligence and injury, when viewed in the light most favorable to plaintiff, giving him the benefit of all inferences which may be properly drawn in his favor, leaves the matter merely to speculation and conjecture, plaintiff's case must fail, for plaintiff carries the burden of adducing substantial evidence tending to affirmatively establish such causal connection.

7. ———: ———: ———. Where plaintiff's proof shows merely that his injury was due to one of several causes, for only one of which could defendant be liable, there can be no recovery.

8. TRIAL PRACTICE: Demurrer to Evidence: Rules of Decision. In passing upon a demurrer to the evidence, it is the duty of the court to refrain from drawing inferences in favor of defendant to countervail or overthrow inferences favorable to plaintiff.

197 M. A.—27

Appeal from St. Louis City Circuit Court.—*Hon. Leo S. Rassieur,* Judge.

Reversed.

*R. P. & C. B. Williams* for appellant.

(1) Where the evidence is as consistent with the absence as the existence of negligence, the case should not be submitted to the jury.    Epperson v. Postal Tel. Co., 155 Mo. 346; Patton v. Railroad, 179 U. S. 658; Delaney v. Delaney, 206 Pa. St. 226; Farrell v. Kaze, 157 Mich. 374; Trapnell v. City, 76 Iowa, 749.    (2)    In this case, in order to be entitled to a verdict, the plaintiff must show three things: First, an infection of the tooth; second, defendant the cause of the infection; third, defendant's negligence in producing the case. Spain v. Burch, 169 Mo. App. 94.    (3)    That the infection followed the attempt to extract the tooth raises no presumption that the defendant was guilty of negligence. Coffey v. Tiffany, 194 Mo. App. 455; Spain v. Burch, 169 Mo. App. 94; McLarin v. Greensfelder, 145 Mo. App. 478.    (4)    It appearing from the evidence of plaintiff that the usual accepted practice of skillful dentists is to sterilize their instruments after they are used by boiling them before they are used again, and it further appearing from the evidence that the defendant boiled his instruments after they were used the last time, before they were used on plaintiff, and this evidence being uncontradicted by any other witness, entitled defendant to a verdict.    Spain v. Burch, 169 Mo. App. 94; Boner v. Nicholson, 179 Mo. App. 146; Fansette v. Grim, 193 Mo. App. 585.

*Safford & Marsalek* for respondent.

(1) (a) In determining whether a demurrer offered at the close of the evidence should have been sustained, the court must give the evidence the most favorable construction of which it is capable in favor of laintiff, tiff's evidence and every reasonable inference therefrom being taken as true.    Hall v. Coal & Coke Co., 260

Mo. 315, 365; Knoche v. Pratt, 187 S. W. 580. (b) Evidence, tending to show absence of plaintiff's right to recover, whether introduced by plaintiff or defendant, cannot be considered, but the demurrer must be tested by the plaintiff's evidence, aided by any of defendant's evidence and any reasonable inference that may be drawn from the entire record in plaintiff's favor. Maginnis v. Railroad, — Mo. —, 187 S. W. 1167-8; Knoche v. Pratt, 187 S. W. -580; Hall v. Coal & Coke Co., 260 Mo. 351, 365; Pounds v. Mercantile Co., 190 S. W. 374. (c) And the court cannot make inferences of fact in favor of defendant to countervail or overthrow inferences of fact in favor of plaintiff. Maginnis v. Railroad, — Mo. —, 187 S. W 1167-8. (d) Where the facts and circumstances shown by the evidence are such that men of ordinary intelligence, viewing them, might differ as to their meaning, and might draw different conclusions therefrom, then it becomes the duty of the court to submit them to the jury, under proper instructions, for determination. Thornsberry v. Railroad, — Mo. —, 178 S. W. 197, 200. And the trial court is not warranted in sustaining a demurrer unless the evidence is such as to leave no room for men of reasonable intelligence to differ. Steffens v. Fisher, 161 Mo. App. 386, 393. (e) Where the evidence is susceptible of two inferences, one lawfully supporting the right of recovery and the other fatal to plaintiff's case, leaving room for reasonable men to differ with respect thereto, the case is one for the jury. Coffey v. Tiffany & Howard, 192 Mo. App. 455, 472; Yost v. Cement Co., 191 Mo. App. 422, 432; Powers Transit Co., 202 Mo. 280; Hurlbut v. Railroad, 130 Mo. 657, 663; Scott v. Springfield, 81 Mo. App. 312, 320; Dakan v. Mercantile Co., 197 Mo. 238, 258. (2) Where the issue is made, whether plaintiff's alleged condition resulted from defendant's negligence or from other causes, evidence tending to prove that the injury "might, could or would" have been caused by the alleged wrongful act requires the submission of the case to the jury. State v. Dargatz, 244 Mo. 218, 225; DeMaet v. Storage Co., 231 Mo. 615; McDonald v. Railroad, 219 Mo. 468;

Sharp v. Railroad, 213 Mo. 517; Glasgow v. Railroad, 191 Mo. 364; Taylor v. Railroad, 185 Mo. 255; Patterson v. Traction Co., 178 Mo. App. 250; Council v. Railroad, 123 Mo. App. 432, 446; Bates v. Dr. King Co., 191 Mass. 585, 77 N. E. 1154; Coffey v. Tiffany, 192 Mo. App. 455; Zimmerman v. Pryor, 190 S. W. 26.    (3) (a) Where the negligence charged is in the performance of a simple act, which ordinary layman are capable of understanding, it is for the jury to say whether or not defendant was negligent; and professional testimony in such a case, that the method of treatment adopted conformed to the usual standard, is purely advisory and not binding on the jury.    Sontag v. Ude, 191 Mo. App. 625-6; Reeves v. Lutz, 179 Mo. App. 75; Shipman v. Ins. Co., 187 Mo. App. 400; Coffey v. Tiffany, 192 Mo. App. 455, 470; Bates v. Dr. King Co., 191 Mass. 585, 77 N. E. 1154; Sharp v. Railroad, 213 Mo. 517; Hoyberg v. Henske, 153 Mo. 63; McDonald v. Railroad, 219 Mo. 481; Laessig v. Protective Assn., 169 Mo. 272; Fetter v. F. & C. Co., 174 Mo. 256, 266; Poumeroule v. Cable Co., 167 Mo. App. 533, 538.    (4) Plaintiff's main instruction properly stated the law. Authorities under point 3.

ALLEN, J.—This is an action for damages alleged to have been sustained by plaintiff through the negligence and unskillfulness of the defendant, a dentist practicing his profession in the city of St. Louis. The suit was begun before a justice of the peace where plaintiff had judgment. Upon defendant's appeal to the circuit court and a trial there *de novo,* before the court and a jury, there was a verdict and judgment for plaintiff in the sum of $50, from which the defendant appealed to this court.

While there were other charges of negligence and unskillfulness in the statement filed before the justice of the peace, the only such assignment therein, if any, which the evidence adduced tended to support, and the only one submitted to the jury by the instructions, was that set forth in the statement in the following language, viz: "That defendant  .  .  .  negligently and unskillfully caused and permitted plaintiff's gum, and the skin and

tissues thereof to become poisoned, infected and inflamed, when defendant by the exercise of ordinary care could have avoided said infection and blood poisoning and protected plaintiff therefrom.''

It appears that on October 15, 1912, plaintiff, who was seventeen years of age at the time of the trial below, went, in company with his mother, to the office of a Dr. Robinson, a dentist in the city of St. Louis, who examined plaintiff's teeth for the purpose of making an estimate as to his charges for doing certain dental work for plaintiff, including the filling of certain teeth and the extraction of two others. It appears that the estimate which Dr. Robinson gave for doing the work was not satisfactory to plaintiff's mother, and on the following day, at about 7:30 p. m., she and plaintiff called upon the defendant. After some conversation had taken place, defendant undertook to extract for plaintiff a tooth which had decayed off until nothing remained of it, it seems, above the gum. Defendant did not use a ''general anesthetic''—it being his practice not to extract teeth where the use of such an anesthetic was necessary—but injected cocaine into the gum, as a local anesthetic, and made efforts to extract the tooth. He did not succeed in so doing, and thereupon advised plaintiff to consult a dentist who made a specialty of extracting teeth and who would administer a general anesthetic. According to defendant's testimony he ''found that the condition was such that it was too painful to extract the tooth without a general anesthetic.'' And defendant gave plaintiff or his mother a professional card of a specialist, a Dr. Fredericks. On the following morning plaintiff and his mother went to the office of Dr. Fredericks who extracted the tooth.

The testimony of plaintiff is to the effect that his teeth had previously caused him no pain; but it is said that he suffered much pain during the entire night, after leaving defendant's office and prior to visiting that of Dr. Fredericks on the following morning, and that his gums and face became badly inflamed and swollen during this time. After the extraction of the tooth plaintiff's condition became more serious; the inflammation,

swelling and pain increased, and within a few days it was found that blood poisoning had developed. He was then treated by certain physicians, and it is undisputed that he endured much pain and suffering.

Defendant, appellant here, insists that plaintiff failed to make out a case for the jury, and that the trial court consequently erred in overruling the demurrer to the evidence. The only other assignment of error pertains to the sufficiency of the evidence to support plaintiff's main instruction, and this need not be separately considered, since the question thus raised will be disposed of by a consideration of the propriety of the court's ruling on the demurrer.

To entitle plaintiff to recover, on the theory upon which the case proceeds, it devolved upon him to adduce substantial evidence tending to show negligence on defendant's part with respect to sterilizing the instrument or instruments which he used upon plaintiff, and that as a direct and proximate cause of such negligence plaintiff's gum was infected, whereby he was injured and damaged.

There is a conflict of evidence as to whether or not defendant sterilized the forceps which he used in attempting to extract plaintiff's tooth, immediately before using them. As to this plaintiff testified that defendant took the instrument from a plush case and began to extract the tooth. He does not say, in so many words, that defendant did not sterilize the instrument by putting it in an antiseptic solution; but upon being asked what time elapsed after defendant took the instrument from the case and before he used it, plaintiff said: "At once." As to the examination of his teeth by Dr. Robinson plaintiff was asked: "Did he take a little pick and pick around to see the condition they were in?" Plaintiff replied: "Yes, sir."

Plaintiff's mother, who maintains that she was then seated in a hall near the door to defendant's office, where she could see defendant and observe what took place, testified that defendant did not sterlize his instruments after taking them from the case; or, at any rate, that she

was in a position to see whether or not he put any of the instruments into an antiseptic solution, and that she did not see him do so. As to this defendant's testimony is that plaintiff's mother was in his waiting room, adjoining the office, at the time when she claims to have seen defendant take the instruments from the case and begin to use them, and that there was a solid wall between the waiting room and the office, making it impossible for her to have seen what took place; that after he had attempted the extraction, she came into the hall and conversed with his wife, but could not have observed whether or not he sterilized his instruments before using them. Plaintiff's mother denied that at a previous trial she testified that she did not know whether or not defendant sterilized his instruments; however, defendant and three of his witnesses testified that she gave such testimony at the former trial.

Defendant testified that the instruments which he used were sterilized before they were put away in the case, and that immediately before using them upon plaintiff he sterilized them by putting them in a lysol solution, an antiseptic solution commonly used by dentists for such purpose and rated as a good antiseptic. He testified that in proceeding to undertake the extraction of plaintiff's tooth he cleaned the gums with an antiseptic solution, injected the local anesthetic into the gums, sterilized his instruments, and undertook to extract the tooth, and that after finishing with plaintiff he "washed the surrounding parts with glycothymaline, an antiseptic used in the mouth." He further testified that plaintiff's gums, as well as his teeth, were in bad condition from lack of care; that there was some inflammation, irritation and redness present in the gums and mouth when plaintiff came to him; that bacteria are found in great quantity in the mouth generally, the amount thereof being increased by lack of care; and that infection frequently arises where no instrument has been used about the mouth. On cross-examination he stated that he always sterilized his instruments before treating a pa-

tient; that unless they are clean there is likelihood of infection.

Dr. Fredericks, whose practice is limited to the extraction of teeth, called as a witness for plaintiff, testified that when plaintiff came to him, "there was a swelling of the gum there that morning," with some redness; but that he observed no cuts in the gums. He stated that he sterilized his instruments before operating upon plaintiff, following the "usual routine." He said: "The instruments are all sterilized before they are put away, and they are sterilized when we use them; ordinarily I don't resterilize them, but sometimes I do." When asked in what manner he sterilized them, he said: "Either by boiling them or immersing them in an antiseptic solution." He was asked if that "was the usual practice of the ordinary dentist in the city of St. Louis," and he replied that it was.

On cross-examination he testified that many kinds of bacteria are constantly present in the mouth of the ordinary individual such as are likely to cause infection; that infections are quite common among dentists' patients, and that these are occasioned by bacteria which may be introduced in a great variety of ways, e. g. in food, by use of a toothpick, drinking cup or glass, etc., or from the atmosphere alone. He was asked: "I understood you to say that the practice in your profession by careful, prudent dentists is to sterilize their instruments either when put away or just previous to being used. Is that the practice?" He answered: "Yes."

Dr. Yeck, a physician who treated plaintiff for the blood poisoning, testified as a witness in his behalf. When asked, on cross-examination, how long it would take "an infectious face to swell up from a normal condition to a very abnormal condition," he said: "That might vary. We sometimes have a poison that gains entrance into the tissues that would not manifest itself for a week or fifteen days, and at other times it will occur within twelve to twenty-four hours."

Dr. Robinson, called as a witness for defendant, testified that he found the condition of plaintiff's mouth

very bad; that the molars on each side were broken off or had decayed off even with the gum; that "the gums were in very poor shape; not only those but others;" that plaintiff was complaining of pain at the time; that "these teeth were infected before any one touched them." He further testified that in nearly every case where a patient comes to a dentist there is some infection, usually not serious, but that it is a very common thing for it to result in blood poisoning; that in the course of his practice he had had perhaps from a hundred to one hundred and fifty patients thus affected, cases of this character averaging at least one per month.

Dr. Turner, a dentist, testifying for defendant as an expert, said: "Most everything that we touch, most every kind of utensil, has bacteria on it. Whether they develop or not is a question of susceptibility and immunity. If the patient is in good physical condition probably they will not develop, but if run down and there are large number of bacteria in his mouth he is likely to have a serious infection."

Dr. Flemming, another dentist who testified for defendant as an expert, stated that it was impossible to thoroughly disinfect the mouth so that it would be surgically clean, "on account of the crevices between the teeth and cavities in the teeth and the acid condition in most mouths." On cross-examination he was asked by plaintiff's counsel: "Is it the usual practice, among dentists of common, ordinary prudence in the city of St. Louis, to clean their instruments before they treat a patient?" He answered: "Well, after every operation the man generally puts the instrument that he used in that case in the sterilizer and"—.At this point plaintiff's counsel interrupted him, saying: "That is all I asked."

Dr. Oatman, a physician, called as an expert witness for defendant, also testified that it was impossible to have the mouth surgically clean; that infection may occur though the instruments used are "absolutely sterile" —that it "happens frequently with all precautions."

If the question of defendant's liability were dependent upon whether or not he sterilized his instruments im-

mediately before using them upon plaintiff, no one would doubt that the case made would be one for the jury. Though plaintiff's own testimony regarding this matter, as stated above, is of no great probative force, and that of his mother was strongly impeached, the testimony of these two witnesses constituted substantial evidence on this question of fact. But it devolved upon plaintiff to establish, prima facie, not only that defendant failed to sterilize his instruments at the time, but that this was negligence on his part and that the injuries for which plaintiff sues proximately resulted therefrom.

Defendant's testimony, uncontradicted, is that he sterilized his instruments before putting them away in the case wherein they were kept when not in use. Plaintiff contends that this testimony should not be reckoned with, for the reason that the jury could disregard it if they saw fit. But the doctrine for which appellant contends in this connection does not mean that where the burden is on the plaintiff to show a failure to do any act and the defendant's evidence that he did do it is uncontradicted, then the jury may not only disbelieve his evidence but may take such disbelief as supplying the affirmative evidence required of plaintiff. [Spain v. Burch, 169 Mo. App. l. c. 108, 154 S. W. 172.] [See, also, Fausette v. Graham, 193 Mo. App. l. c. 594, 186 S. W. 1177; Boner v. Nicholson, 179 Mo. App. l. c. 160, 161 S. W. 309.] Plaintiff adduced no evidence tending to show a failure on defendant's part to sterilize his instruments before thus putting them away. And the case must proceed upon theory that, though they were so sterilized, it was nevertheless negligence not to resterilize them before using them.

The only direct testimony on the subject is that the practice in the profession, among careful, prudent dentists, is to sterilize instruments either before putting them away or immediately prior to using them. From the testimony as a whole, and particularly because of the fact that defendant testified that it was his constant practice to sterilize his instruments immediately before using them as well as before putting them away after

use, it is argued that the evidence, when viewed in the light most favorable to plaintiff, is susceptible of the construction that ''the usual practice of dentists requir-ed the sterilization of defendant's instruments imme-diately before they were used upon plaintiff.'' As to this we need only say that were the infection directly traceable to the instrument or instruments used, per-haps the thoroughness with which defendant sterilized them would be a matter for the jury, as held in Bates v. Dr. King Co., 191 Mass. 585. But in the view which we take of the phase of the case presently to be noticed it is unnecessary to pass judgment upon this question.

The difficulty with plaintiff's case, as we see it, is a lack of evidence of any substantial character tending in law to show that plaintiff's injuries proximately resulted from defendant's negligence, if any, in failing, if he did, to sterilize his instruments immediately before using them. It is axiomatic in the law of negligence that a causal connection must be established between the injury or loss suffered and the negligence with which the de-fendant is charged. This need not be shown by direct and positive testimony; it is sufficient if it be made to appear by inference or inferences which may be rea-sonably and legitimately deduced from the facts and cir-cumstances shown in evidence. But if the evidence, when viewed in the light most favorable to plaintiff, giving him the benefit of all inferences which may be properly drawn in his favor, leaves the matter merely to specula-tion and conjecture, plaintiff's case must fail; for plain-tiff carries the burden of adducing substantial evidence tending to affirmatively establish such causal connection. [See Battles v. Railways Co., 178 Mo. l. c. 614, 615, and cases cited, 161 S. W. 614.] Under the evidence in the record before us, we think, that plaintiff failed to carry the burden thus resting upon him. We have stated the evidence at some length, supra and it is unnecessary to summarize it here. The infection may perhaps have originated from defendant's instruments, but on the oth-er hand the opportunity for infection from a great va-riety of other sources was at least equally great. Testi-

mony for defendant makes it appear that the infection had its origin prior to the time when defendant undertook to extract plaintiff's tooth. Opposed to this is the mere testimony of plaintiff that he had not suffered pain from his teeth (though Dr. Robinson says that plaintiff came to him because of being in pain therefrom.) However this may be, it is undisputed that plaintiff's teeth had been sadly neglected and that many of them were badly decayed. And the evidence shows that, even where such conditions are not present, the mouth contains many germs likely to cause infection, and that when the teeth are permitted to thus become decayed and rotten the danger therefrom is greatly enhanced; that infection may occur, and does very commonly occur, where no instruments have been used, originating solely from the condition of the patient and his susceptibility to the ravages of bacteria which are ever present. And aside from this three dentists used instruments in plaintiff's mouth within as many days.

When the entire evidence touching the matter is viewed it seems quite clear that the showing made is merely that plaintiff's injury was due to some one of several causes, for one of which only could the defendant be liable; and that which of these was the *causa causans* is a matter of pure conjecture. Under such circumstances the authorities agree that no recovery may be had.

In this connection it may be said also that the testimony of Dr. Yeck, plaintiff's witness, makes it appear that the inflammation and swelling which are said to have been present when plaintiff returned home from defendant's office and which caused intense suffering all of that night, could not have been the result of germs introduced by defendant; for it seems that the poison would not have manifested itself in so short a time.

Respondent argues that it is the duty of this court, in passing upon the demurrer, to refrain from drawing inferences in favor of defendant to countervail or overthrow inferences favorable to plaintiff, citing Maginnis v. R. R., —— Mo. ——, 187 S. W. 1167-8; Hall v. Coal & Coke Co., 260 Mo. 351, l. c. 365, 168 S. W. 927; Knoche

v. Pratt, 187 S. W. l. c. 580. This we concede. The doctrine invoked is fully expounded in the leading case of Bushing v. Laclede Gas Light Co., 73 Mo. 219, which has been cited and followed by a long line of cases in this State. But as we view the case before us, the evidence is not such as to warrant a verdict against defendant founded upon an inference that the infection originated with defendant's instrument; but shows a mere possibility that plaintiff was thus inoculated with the poison. If some substantial evidence were present having a tendency to exclude other possible origin of the infection, we would have a totally different case to deal with. But the evidence discloses that the infection was one resulting from the presence of bacteria which are ever present, and to which plaintiff was constantly exposed both before and after defendant's attempt to extract his tooth; that the decayed condition of plaintiff's teeth rendered him readily susceptible to such infection, a thing quite common in such cases. And while it may not conclusively appear that plaintiff's teeth were infected prior to his visit to defendant—as Dr. Robinson says was the case—the evidence strongly points to this. In the most favorable view of the evidence for plaintiff, we think, the origin of the infection is left to pure conjecture. And in order to get his case to the jury it devolved upon plaintiff to get it out of the fog of conjecture and speculation. [See McGee v. Railroad Co., 214 Mo. l. c. 503, 114 S. W. 33.]

In Bates v. Dr. King Co., supra, upon which plaintiff places reliance, as being "a case similar on the facts with the case at bar," the evidence differed widely from that here present. In the first place, the infection was of a character quite different from that here involved, being syphilitic. The proof went to show that the plaintiff was thus infected by the use of a revolving metal "brush" used by the defendant in cleaning her teeth. Three cuts were made thereby within plaintiff's mouth, and two or three weeks thereafter syphilitic sores began to form at these places. And the evidence tended to exclude any other possible origin of the infection. In the case before

us the evidence has no such tendency. On the contrary, it goes no farther, at most, than to make it appear that defendant's negligence, if any, was one among a great number of possible causes, from any one of which plaintiff's injuries may have proximately resulted.

The judgment must accordingly be reversed, and it is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.