**BARKER v. HEANEY et al.**

No. 9543.

Court of Civil Appeals of Texas.
San Antonio.

April 17, 1935.

Rehearing Denied May 22, 1935.

J. B. Lewright, of San Antonio, and W. T. Scarborough, of Kenedy, for plaintiff in error.

Kleberg & Eckhardt, B. D. Tarlton, L. Hamilton Lowe, and J. C. North, all of Corpus Christi, for defendants in error.

MURRAY, Justice.

The parties will here be designated plaintiff and defendants, as they were in the trial court.

This suit was instituted by Ramona Barker, as plaintiff, against four physicians, Doctors Harry G. Heaney, J. Nast, Burch Thompson, and E. F. Stroud, seeking to recover damages accruing to her by virtue of the death of her husband, Cleveland (Cleve) Barker, alleged to be the result of the negligent acts of the above-named defendants while performing an operation upon the deceased.

The case was tried to a jury. The court instructed the jury to return a verdict in favor of Dr. J. Nast and submitted the cause of action as to the other three doctors to the jury. The jury's answers to the special issues thus submitted were favorable to the doctors, and from the resulting judgment Mrs. Ramona Barker has prosecuted this appeal by means of a writ of error.

The facts are as follows: Cleve Barker and his wife, Ramona Barker, resided in Kenedy, Karnes county, Tex. On Sunday, May 29, 1932, Cleve Barker went in an automobile to Corpus Christi, Nueces county, Tex., and there registered at the Plaza Hotel. Barker was drinking when he left Kenedy and continued to drink after he arrived in Corpus Christi. About 11 o'clock on this Sunday morning, Mrs. Leola Moore was summoned to his room as a practical nurse. She found him in an intoxicated condition and suffering with inflamed eyes. Dr. C. O. Watson, the house physician at the Plaza Hotel, was summoned to Barker's room, and he directed Mrs. Moore to place towels on Barker's eyes and otherwise treat him. Barker would sleep for a while, awaken for a short period of time, take a drink or two of whisky or cognac, and then go back to sleep. Mrs. Moore stayed in his

room until about 11 o'clock Sunday night, at which time she returned to her home, coming back to the hotel about 6 o'clock the next morning, Monday, May 30. Barker was still intoxicated and continued to drink intoxicating liquor throughout the day. About noon on this Monday one of the defendants, Dr. Heaney, was summoned to Barker's room and visited him for some fifteen or twenty minutes. He informed Barker that he had bad tonsils and should have them removed. Later in the day, Barker phoned Dr. Heaney and suggested to him that he come to the hotel and remove his tonsils. This Dr. Heaney declined to do, and informed him that he could only have a tonsillectomy performed by going to the hospital. This Barker first refused, but later decided to do. About 7 o'clock Monday evening, after eating a large meal, Barker called a taxicab, and, in company with Mrs. Moore, went to the hospital, taking with him a quart bottle of liquor about two-thirds full. Mrs. Moore testified that Barker took three more drinks after arriving at the hospital. It was estimated that during the two days, Sunday and Monday, he had consumed approximately seven pints of intoxicating liquor, that is, either whisky or cognac. When Barker arrived at the hospital he was assigned to room No. 5, where he was undressed, put to bed, and prepared for the operation. Several nurses assisted in this preparation, and Doctors Heaney, Thompson, and Stroud visited him in room No. 5 and had an opportunity to observe him before he was taken to the operating room, where, about 8 o'clock Monday evening, May 30, Barker's tonsils were removed. The operation consumed about 40 or 45 minutes, after which time Barker was returned to room No. 5, where, some two or three hours later, he died.

The first question with which we are confronted in this appeal is whether or not the evidence in this case was sufficient to show that Barker's death was proximately caused by the negligence of the defendant doctors. The plaintiff alleged the following items of negligence:

"(a) Improper preparation for the operation.

"(b) Failure to make a blood test.

"(c) Failure to make a coagulation test of the deceased's blood.

"(d) Failure to determine the deceased's blood pressure.

"(e) Performing the operation while the patient had a full stomach, thereby necessitating the use of an excessive amount of anæsthetic.

"(f) The administration of an excessive dose of morphine.

"(g) Operating on the patient while intoxicated thereby necessitating the use of an excessive amount of anæsthetic.

"(h) Performing the operation while the patient was intoxicated instead of delaying at least ten days.

"(i) Using a defective drain tube during the operation, thereby causing the patient to swallow an excessive amount of blood.

"(j) Performing the operation while the physicians were nervous and agitated and in a hasty manner.

"(k) Failure to remain in attendance on the patient after the operation.

"(l) Operating on the patient while he was in such physical condition that he could not stand the operation.

"(m) Performing the operation with great haste and without proper preparation.

"(n) Failure to use ordinary care after the operation."

The evidence in this case is insufficient to raise the issue of negligence as to the items set forth in sections a, b, c, d, e, f, g, i, j, k, m, and n. The testimony given by Mrs. Leola Moore, however, is sufficient to raise an issue of fact as to the items of negligence set forth in sections h and l, which items, in effect, state that it is negligence to operate upon a drunken man, a person who is under the influence of intoxicating liquor.

The next question to be considered is whether or not there is any evidence establishing a causal connection between the acts of negligence stated in sections h and l and the death of Barker. The plaintiff's only expert witness was Dr. Thad Shaw, who testified by way of deposition. Dr. Shaw did not attempt to testify in answer to a hypothetical question, that under the facts in this case Barker's death was proximately caused by the negligence of the defendants. He did testify that if a drunken person is operated upon that certain bad results may follow. He states that in an average case morphine administered to a patient under the influence of liquor acts as a sedative, but in many cases if given beyond the average dose it proves fatal. He further states that administering a general anæsthetic to a patient who has a full stom-

ach causes the stomach to absorb more anæsthetic than necessary and the patient will vomit and because of the vomiting will get some of the material into his lungs, and thus cause the patient to have pneumonia. He testified that liquor stimulates the blood pressure at first, then later lowers it; that a general anæsthetic given to a drunken person will sometimes throw him into delirium tremens; that a drunken person will require more anæsthetic than a sober person. He further testified that the physical effect of administering a general anæsthetic to a drunken person is, it takes a double amount of anæsthetic and there is a great danger of heart failure and pneumonia. The undisputed evidence in this case shows that Barker did not develop pneumonia, that it did not take more than the usual amount of anæsthetic for Barker, and that he did not vomit as a result of the anæsthetic. The undisputed evidence shows that his blood pressure was normal. He did not develop delirium tremens. He did not have heart failure while the operation was being performed, nor after the operation within the period which the expert witnesses say it could have occurred as a result of Barker's intoxication.

Dr. Shaw says further that more morphine than one-quarter of a grain has frequently proved fatal to alcoholic patients by producing a paralysis of the respiration. The undisputed evidence shows that no paralysis of the respiration took place, but, on the contrary, that the respiration was normal for nearly three hours after the operation. The undisputed testimony shows that the operation was performed about 8:30 p. m.; that following the operation Barker's condition was good; that his pulse and respiration were all right until about 11:45 p. m., at which time his pulse suddenly became very weak, his respiration slow and shallow, and he suddenly died.

Eight expert witnesses testified that Barker's death was not due to the fact that he was operated upon while intoxicated; while no expert witness testified that his death was due to the fact that he was operated upon while intoxicated. Plaintiff contends that her husband, Cleve Barker, was a strong healthy man and that if he had not been operated upon he would not have died. This is no doubt true, but a physician is not a warrantor of cures. Many patients probably die from the effect of operations who would have lived for some time but for the operation. However,

this fact alone does not establish the fact of malpractice, or that the operation was not skillfully and properly performed. The rule of res ipsa loquitur does not apply in a malpractice case. The fact that the operation was not successful does not establish the fact that the doctors were negligent and that such negligence was the proximate cause of the injury or death.

In Ewing v. Goode (C. C.) 78 F. 442, 443, Circuit Judge Taft said:

"It is well settled that in such an employment the implied agreement of the physician or surgeon is that no injurious consequences shall result from want of proper skill, care, or diligence on his part in the execution of his employment. If there is no injury caused by lack of skill or care, then there is no breach of the physician's obligation, and there can be no recovery. Craig v. Chambers, 17 Ohio St. 253, 260. Mere lack of skill, or negligence, not causing injury, gives no right of action and no right to recover even nominal damages. This was the exact point decided in the case just cited.

"In Hancke v. Hooper, 7 Car. & P. 81, Tindal, C. J., said: 'A surgeon is responsible for an injury done to a patient through the want of proper skill in his apprentice; but, in an action against him, the plaintiff must show that the injury was produced by such want of skill, and it is not to be inferred.'

"Before the plaintiff can recover, she must show by affirmative evidence—first, that defendant was unskillful or negligent; and, second, that his want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for the consideration of the jury. The naked facts that defendant performed operations upon her eye, and that pain followed, and that subsequently the eye was in such a bad condition that it had to be extracted, establish neither the neglect and unskillfulness of the treatment, nor the causal connection between it and the unfortunate event. A physician is not a warrantor of cures. If the maxim, 'Res ipsa loquitur,' were applicable to a case like this, and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the 'ills that flesh is heir to.' * * *

"In many cases, expert evidence, though all tending one way, is not conclusive upon the court and jury, but the latter, as men of affairs, may draw their own inferences from the facts, and accept or reject the statements of experts; but such cases are where the subject of discussion is on the border line between the domain of general and expert knowledge, as, for instance, where the value of land is involved, or where the value of professional services is in dispute. There the mode of reaching conclusions from the facts when stated is not so different from the inferences of common knowledge that expert testimony can be anything more than a mere guide. But when a case concerns the highly specialized art of treating an eye for cataract, or for the mysterious and dread disease of glaucoma, with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence. There can be no other guide, and, where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury. Again, when the burden of proof is on the plaintiff to show that the injury was negligently caused by defendant, it is not enough to show the injury, together with the expert opinion that it might have occurred from negligence and many other causes. Such evidence has no tendency to show that negligence did cause the injury. When a plaintiff produces evidence that is consistent with an hypothesis that the defendant is not negligent, and also with one that he is, his proof tends to establish neither. Louisville & N. R. Co. v East Tennessee, V. & G. Ry. Co., 22 U. S. App. 102, 114, 9 C. C. A. 314, and 60 F. 993; Ellis v. Railway Co., L. R. 9 C. P. 551."

■ The expert testimony here does not show that the physicians were negligent, nor that any negligence on their part was the proximate cause of Barker's death. Loudon v. Scott, 58 Mont. 645, 194 P. 488, 12 A. L. R. 1487.

The preponderance of evidence here establishes the fact that Barker's death was the result of a blood clot getting into the blood stream and finding its way to the heart, and there blocking the heart action and producing death. The experts say that whether the operation is skillfully or unskillfully performed, or whether the patient is drunk or sober, has no bearing upon a complication of this kind, called an embolism.

■ Even if there were evidence that Barker's intoxication was a proximate cause of his death, the fact that the evidence shows, with at least equal clarity, that an embolism may have been the sole proximate cause of his death, there would be no issue to go to the jury. The jury will not be permitted to guess which of two causes shown by the evidence may have caused the death of the deceased. Jury verdicts must be based upon something more than speculation, conjecture, or inference. The plaintiff's evidence must exclude all other reasonable hypotheses of another and different sole proximate cause. Lippold v. Kidd, 126 Or. 160, 269 P. 210, 59 A. L. R. 875; Butler v. Rule, 33 Ariz. 460, 265 P. 757; Ramberg v. Morgan (Iowa) 218 N. W. 492; Pettigrew v. Lewis, 46 Kan. 78, 26 P. 458; Elam's Adm'r v. Botkin, 227 Ky. 517, 13 S.W.(2d) 507; Wright v. Clement, 287 Mass. 175, 190 N. E. 11; Nevinger v. Haun, 197 Mo. App. 416, 196 S. W. 39; Yaggle v. Allen et al., 24 App. Div. 594, 48 N. Y. S. 827; Searer v. Lower, (Ohio) 158 N. E. 199; Stewart v. Crook Sanatorium, 17 Tenn. App. 589, 69 S.W.(2d) 259; Matuschka v. Murphy, 173 Wis. 484, 180 N. W. 821; Urrutia v. Patino (Tex. Civ. App.) 297 S. W. 512; Id. (Tex. Civ. App.) 10 S.W.(2d) 582; Taylor v. Shuffield (Tex. Civ. App.) 52 S.W.(2d) 788 (writ granted); Wilkins v. Ferrell, 10 Tex. Civ. App. 231, 30 S. W. 450; 33 Tex. Jur. 350, § 67; Floyd v. Michie (Tex. Civ. App.) 11 S.W.(2d) 657.

We conclude that there is no expert medical testimony to establish that Barker's death was proximately caused by the negligence or want of proper care and skill on the part of defendants, and therefore sustain defendants' contention that the trial judge should have instructed a verdict in favor of defendants.

■ The above holding renders it unnecessary for us to pass upon the propositions of law presented by plaintiff, except the first proposition, which asserts that it was the duty of defendants to secure the permission of plaintiff before operating upon her husband. We overrule this proposition. It is true that a physician must secure the consent of the parent to operate upon a minor child, Moss v. Rishworth (Tex. Com. App.) 222 S. W. 225, but the wife is not the guardian of the husband and her consent is not necessary before a physician is authorized to perform an operation upon him.

The plaintiff having failed to discharge the burden resting upon her to prove that

her husband's death was proximately caused by the negligence and want of skill on the part of defendants in performing a tonsillectomy upon her deceased husband, the judgment of the trial court will be affirmed.