Mary P. BENDER, Plaintiff-Appellant,

v.

Dr. Frank S. DINGWERTH et al.,
Defendants-Appellees.

No. 27639.

United States Court of Appeals,
Fifth Circuit.

April 21, 1970.

Rehearing Denied May 6, 1970.

Otto B. Mullinax, Dallas, Tex., Herbert L. Lenchner, Pittsburg, Pa., John E. Collins, Dallas, Tex., for appellant.

William David, Sloan B. Blair, Ft. Worth, Tex., for appellees.

Before RIVES, GOLDBERG and GODBOLD, Circuit Judges.

GOLDBERG, Circuit Judge:

In this medical malpractice case we wrestle with the usual problems attendant upon such suits and with a particularly difficult one concerning proximate cause, a concept which has all too often thrown judges and lawyers into confusion as though it were a brooding omnipresence in the sky of torts.

Invoking diversity jurisdiction, Mary P. Bender, the surviving wife of Thomas C. Bender, brought this action on behalf of herself and her minor son against Dr. Frank S. Dingwerth and his partners for alleged acts of medical malpractice occurring in Arlington, Texas. The defendants practiced medicine under the firm name of Arlington Medical Center in that city. The Benders were patients of Dr. Kenneth Adams, one of the clinic partners. Thomas Bender was receiving treatment from Dr. Adams for a diabetic condition which apparently was manageable and not disabling. On the evening of January 21, 1966, Bender awakened about 11:30 p.m., experiencing sharp pain in his chest and difficulty in breathing. Mrs. Bender attempted to contact Dr. Adams, but was informed that Dr. Dingwerth, who apparently had never treated Bender before, was on call that evening. After hearing Mrs. Bender's description of her husband's symptoms, Dr. Dingwerth advised her that he would meet them in the emergency room of Arlington Memorial Hospital. The Benders arrived at the hospital twenty minutes later. Dr. Dingwerth arrived approximately an hour and a half later, having waited at his home until the emergency room nurse notified him that the Benders had arrived at the hospital. After his arrival Dr. Dingwerth examined Bender and recorded impressions of early pneumonitis or pulmonary congestion. He administered a mild sedative to Bender and admitted him to the hospital as a bed patient, prescribing cough syrup. Bender had a restless night and died suddenly the next morning of an acute myocardial infarction (heart attack).

Mrs. Bender brought this suit against Dingwerth and his partners, alleging several grounds of malpractice: (1) failure to reach a diagnosis of heart disease in view of the patient's medical history and symptoms upon examination; (2) failure to consult a heart specialist; (3) failure to treat the deceased as a heart patient; (4) failure to use the best available diagnostic tool, an electro-

cardiogram, to reach a diagnosis; and (5) delaying his arrival at the hospital for over an hour.

At trial various medical experts testified concerning the propriety of Dr. Dingwerth's conduct and the cause of Thomas Bender's death. At the conclusion of the evidence the court submitted special interrogatories to the jury. Issue number one asked whether Dr. Dingwerth had been negligent in his examination, diagnosis, care, or treatment of Thomas Bender. Issue number two asked whether that negligence, if any, was a proximate cause of the death of Thomas Bender. The jury answered affirmatively in response to the negligence issue, finding Dr. Dingwerth's conduct negligent in one or more respects. In answer to issue number two, however, the jury found that Dr. Dingwerth's negligence was not a proximate cause of Bender's death. On the basis of these jury findings the district court entered judgment for defendant Dingwerth and his partners.

Mrs. Bender appeals, alleging that the trial court erred (1) in its instruction on proximate cause, (2) in failing to instruct a verdict for the plaintiff, (3) in failing to instruct the jury that Dr. Dingwerth's delay in arriving at the hospital should be measured by the standard of conduct of an ordinary prudent person rather than by a medical standard, and (4) in limiting the community standard relative to the doctor's conduct to the Arlington, Texas, community or a similar community. Finding error in the court's instructions concerning proximate cause, we reverse and remand for a new trial.

## I.

In its instructions to the jury the court defined proximate cause in the following terms, to which plaintiff does not object:

"By the term 'Proximate Cause', as used in this charge, is meant a moving and efficient cause without which the event in question would not have happened; an act or omission becomes a proximate cause of an event whenever such event is the natural and probable consequence of the act or omission in question, and one that ought to have been foreseen by a person of ordinary care and prudence in the light of attending circumstances. There may be more than one proximate cause of an event."

In another part of the charge, however, the court in instructing the jury on the plaintiff's burden of proof made the following explanation concerning proximate cause, to which the plaintiff does object:

"In a malpractice suit the burden is on the plaintiff to prove by the testimony of a practitioner in the same field of practice as the defendant that the diagnosis or treatment complained of was such as to constitute negligence, and that the negligence was a proximate cause of the patient's injuries; however, the testimony of practitioners in a different field of medicine is competent where the subject of inquiry is common to and equally recognized in all the fields of practice involved. *And the plaintiff's proof in this respect must not only establish the defendant's act or acts as a proximate cause, but must exclude any hypothesis as to the existence of another efficient proximate cause.*" [Emphasis added.]

We find the concluding sentence of the instruction fatally deficient. Although the court did not define "efficient proximate cause," we assume that the court meant an act with a causal relationship to the injury sustained. Fairly read, this language instructed the jury that the plaintiff had to prove that Dr. Dingwerth's negligence was, standing alone, the single cause of the death of Thomas Bender and that nothing else contributed to that event. In other words, this charge instructed the jury that the plaintiff in order to recover had to prove that Dr. Dingwerth's negligence was the *sole* proximate cause of Bender's death. This is simply not the law in Texas. In a malpractice case, as in other negligence cases, the plain-

tiff need prove only that the negligent act of the defendant was *a* proximate cause of the injury sustained. As the Texas Supreme Court said in Bowles v. Bourdon, 1949, 148 Tex. 1, 219 S.W.2d 779, 782:

"It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was *a proximate cause* of the patient's injuries." [Emphasis added.]

Accord, Hart v. Van Zandt, Tex.1966, 399 S.W.2d 791. The plaintiff's burden is thus the affirmative one to establish that the doctor's negligence is one proximate cause of the injury. We have not been cited to nor have we found a single case in which the Texas courts have held that the plaintiff has the *negative* burden of disproving every other possible contributing cause of the injury.[1] In approaching this very question the Texas Court of Civil Appeals recently remarked in Rose v. Friddell, Tex.Civ.App. 1967, 423 S.W.2d 658, 664, writ ref'd n. r.e.

"We recognize the rule which states that where there are two or more causes which might have produced the injury, for only one of which the defendant is responsible, and there is no evidence to show (sic) which cause the injury is actually attributable, a verdict should be directed for the defendant. Bowles v. Bourdon, supra.

However, we do not believe the rule goes so far as to require the plaintiff to prove causation by direct and positive evidence which excludes every other reasonable hypothesis. It is generally held that evidence which shows reasonable probability that defendant's negligence or want of skill was the proximate cause is sufficient to raise an issue for the jury. 13 A. L.R.2d 28."

Much of the confusion in this area has no doubt resulted from a misreading of the rule referred to by the Texas court in *Rose*. It is common for a court in stating the rules governing malpractice cases to assert that the plaintiff has not presented a sufficient case to go to the jury if several possible causes for the injury are shown, only one of which is attributable to the doctor, and the evidence does not establish that any of the alleged causes are actually responsible for the injury. Hart v. Van Zandt, *supra*; Bowles v. Bourdon, *supra*; Henderson v. Mason, Tex.Civ.App.1964, 386 S.W.2d 879; Lenger v. Physician's General Hospital, Tex.Civ.App.1969, 438 S. W.2d 408, writ granted; Ross v. Friddell, *supra*. The plaintiff's difficulty in these cases, however, is not a failure to show that the doctor's act was the *only* cause of the injury, but rather the failure to prove that there was any causal relationship at all between the doctor's act and the ensuing injury. This difficulty usually occurs because the plaintiff's expert medical witnesses are reluctant to state outright that the defendant's act or any other act was a cause of the resulting injury, preferring as medical men to state that such an act *might* have caused the injury. *See* Small, Gaffing at a Thing Called Cause: Medico-Legal Conflicts in the Concept of

---

1. The court in Barker v. Heaney, Tex.Civ. App.1935, 82 S.W.2d 417, writ dism., did state that "the plaintiff's evidence must exclude all other reasonable hypotheses of another and different *sole proximate cause*." *Id.* at 420 (emphasis added). This however, does not in any way change the plaintiff's burden of proof to require the negation of all other possible efficient causes. It merely states the plaintiff's affirmative burden in different words. If the plaintiff discharges his affirmative burden of proving that the doctor's act was *a* proximate cause of the injury in question, then the plaintiff obviously has accomplished what the *Barker* court required—he has proved that no other cause is the *sole* cause of that same injury. See G. M. Hodges, Special Issue Submission in Texas 58 (1959) for a discussion of the relationship between "sole proximate cause" and "a proximate cause."

Causation, 31 Texas L.Rev. 631 (1953). The result is that the plaintiff fails to prove what he must prove in any negligence case—that the act complained of was *a* proximate cause of the injury. The rule, therefore, is one demanding strict proof of causation in fact; it does *not* demand that the doctor's negligence be the *sole* or *only* proximate cause in order for the plaintiff to recover. It merely requires proof that the doctor's act is in fact *a* cause.

■ The charge in the instant case was plainly prejudicial because it imposed on the plaintiff the burden of proving that the doctor's negligence was the sole proximate cause of her husband's death. The defendant, however, asserts that this error is harmless because the judge had in another part of the charge correctly informed. the jury that there could be more than one proximate cause and had phrased issue number two so that the jury was properly asked whether the defendant's negligence was *a* proximate cause of the plaintiff's injury. The jury's negative answer to this issue, the defendant contends, precludes liability and renders academic and immaterial any question as to whether or not plaintiff also had to negate other causes in order to establish liability. Indulging as we must in the hopeful hypothesis that the jury parses every phrase of the trial judge's charge, we must disagree with the defendant's assertion that this error was harmless. In the wide spectrum of decisions affecting proximate cause, we have developed a body of dialectics which has given us some boilerplate charges, many of which become logically distorted by the omission, addition or rearrangement of a single word or phrase. Moreover, proximate cause is one of the more elusive concepts developed by our jurisprudence. Its philosophic articulation by a court is difficult enough for a jury to apply empirically under the best of circumstances. When the jury is instead given conflicting instructions, first being told that more than one proximate cause may exist and then being told that the plain-

tiff must exclude every other efficient proximate cause in order to recover, we think it is impossible to assume that the jury obeyed the former and rejected the latter when it found that the defendant's negligence was not *a* proximate cause of Bender's death. The distinction between "*a* proximate cause" and "*sole* proximate cause" is a legal philologist's nightmare. It could hardly be expected that a lay jury would comprehend and correctly apply such a distinction in the face of conflicting and inadequately defined instructions by the court. Because of the court's error in instructing the jury, we must reverse and remand for a new trial.

## II.

■ Plaintiff has also suggested that we should at this point enter judgment for her because defendant's negligence was as a matter of law a proximate cause of the decedent's death. Correctly stated, this is a request that we grant judgment for the plaintiff notwithstanding the jury's verdict on proximate cause. It is settled that an appellate court does have the power to render such a judgment when the evidence shows that the court below erred in refusing to grant a party's motions for a directed verdict and judgment notwithstanding the verdict. Neely v. Martin K. Eby Construction Co., 1967, 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75. Under the circumstances of this case, however, the district court was not in error in refusing to grant the plaintiff's motions. In Boeing v. Shipman, 5 Cir. 1969, 411 F.2d 365, this court sitting en banc wrought for our circuit the standard for granting or denying motions for a directed verdict or judgment notwithstanding the verdict. In *Boeing* we said:

> "On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the nonmover's case—but in the light and with all reasonable inferences most favorable

to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Id.* at 374.

■ In applying the *Boeing* rule of reluctant jury displacement to the fatal facts here, it is obvious that there was a place in the sun for the jury to pass upon the derelictions of the doctor and their relationship to the eventual death of Thomas Bender. The record is replete with disputations as to whether or not the diagnosis and treatment were medically proper under the facts then known. The possibilities and probabilities were probed, the pros and cons examined, in order for the jury to fix responsibility. These facts and opinions paraded before the jury were in great dispute and do not lead to such a conclusive certainty that all doubt is dispelled as to whether or not the doctor was guilty of negligence proximately causing Bender's death. Under such circumstances preemptory disposition is forbidden to the trial court and to us. Boeing v. Shipman, *supra.*

Plaintiff's reliance on Hicks v. United States, 4 Cir. 1966, 368 F.2d 626, in support of her request for a judgment notwithstanding the verdict is totally misplaced. In *Hicks* a young woman died after a doctor failed to diagnose properly a curable but extremely serious illness requiring immediate treatment. All medical experts, including the defendant doctor himself, agreed that his diagnostic procedure was below the accepted medical standard. The trial court nevertheless held that the evidence was insufficient to establish negligence proximately causing the patient's death. On appeal the Fourth Circuit reversed, holding that the undisputed facts were sufficient as a matter of law to establish negligence and proximate cause. In so holding that court said:

"The question before us is not one of fact in the usual sense, but rather whether the undisputed facts manifest negligence. Although the absence of a factual dispute does not *always* mean that the conclusion is a question of law, it becomes so *here* since the ultimate conclusion to be drawn from the basic facts, i.e., the existence or absence of negligence, is actually a question of law. For this reason, the general rule has been that when a judge sitting without a jury makes a determination of negligence, his conclusion, as distinguished from the evidentiary findings leading to it, is freely reviewable on appeal. Mamiye Bros. v. Barber Steamship Lines, Inc., 360 F.2d 774, 776 (2d Cir. 1966). The determination of negligence involves not only the formulation of the legal standard, but more particularly in this case, its application to the evidentiary facts as established; and since these are uncontested, there is no basis for applying the 'clearly erroneous' rule. United States v. Parke, Davis & Co., [362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505] supra; Kippen v. American Automatic Typewriter Co.,

324 F.2d 742, 745 (9th Cir. 1963); Romero v. Garcia & Diaz, Inc., 286 F.2d 347, 355 (2d Cir. 1960), cert. denied 365 U.S. 869, 81 S.Ct. 905, 5 L.Ed.2d 860 (1961); Galena Oaks Corp. v. Scofield, 218 F.2d 217, 219 (5th Cir. 1954)." 368 F.2d at 631.

It is patently obvious that the circumstances upon which the Fourth Circuit justified its action in *Hicks* do not exist in the case before us. There it was undisputed that the doctor's diagnostic procedures were, under the circumstances then present, inconsistent with the medically accepted standard; here the evidence on this question is in great dispute, thus necessitating a determination of purely evidentiary matters. More importantly, in *Hicks* the trial was before the court without a jury; here the issues were submitted to a jury, and to preemptorily reverse this verdict the standards of Boeing v. Shipman, *supra*, must be met, not some exception to the clearly erroneous rule. The *Hicks* case is therefore totally inapplicable to the case at bar and provides absolutely no basis upon which this court could enter a judgment notwithstanding the verdict for the plaintiff.

### III.

■ Since this case must be retried because of an error in the court's instructions to the jury, we think it appropriate and in the interest of judicial efficiency to comment briefly on several questions which may arise at the new trial. Plaintiff has here contended that the trial court erred in not allowing the jury to evaluate Dr. Dingwerth's delay in arriving at the hospital by the standard of an ordinarily prudent person rather than by a medical standard. The court charged the jury as follows:

" 'Ordinary care' with reference to the conduct of the defendant, Dr. Dingwerth, means that degree of care which a general practitioner of ordinary prudence of the same school of medicine and practicing in the Arlington, Texas, community or a similar community would have exercised under the same or similar circumstances at the time and on the occasion in question as determined by the acceptable standards of the medical profession in the Arlington, Texas, community or similar community."

We think this was correct. Though other jurisdictions may prescribe lay standards of conduct to evaluate medical negligence, Texas, except in very narrow circumstances, adheres to the professionalization of such standards. The general rule is that negligence in a malpractice case must be proved by the testimony of a doctor of the same school of practice as the defendant doctor. Hart v. Van Zandt, *supra*; Bowles v. Bourdon, *supra*. The only recognized exception to this rule occurs when the negligence is of a type that is obvious to a layman. Jeffcoat v. Phillips, Tex.Civ.App.1967, 417 S.W.2d 903, writ ref'd n.r.e.; Henderson v. Mason, Tex.Civ.App. 1964, 386 S.W.2d 879. A comparison of the cases reveals that the professional standard of conduct rather than the ordinary standard applies to more than the physician's skill or technique in actual treatment. It applies to all matters wherein the doctor must exercise medical judgment. For example, in Wilson v. Scott, Tex.1967, 412 S.W.2d 299, the Texas Supreme Court applied the physician's standard to the question of the risks which must be disclosed to a patient contemplating surgery. Obviously a doctor's evaluation of the seriousness of a patient's illness and the relative urgency of immediate treatment is a subject requiring expert medical judgment. Under such circumstances Texas exacts a professional standard of conduct. Therefore, for our court to hold that some lay community standard should apply to the doctor's duty to respond to a patient's symptomatic expositions would be contrary to Texas precedent and, we think, to common sense. Ordinarily a layman should not fashion a doctor's duty because even with our modern diffusion of knowledge some matters are beyond the layman's ken. Under the circumstances of this case, what a com-

petent physician is expected to do is a question for medical experts, not for the butcher, the baker, or the candlestick maker.

■ Plaintiff has also objected to the fact that the court's charge limited the community standard relative to the doctor's competence to Arlington, Texas, or a similar community. Her complaint in this respect seems to be that this charge instructed the jury to disregard the testimony of her experts, none of whom were from Arlington. The community standard, whether it be sufficiently cosmopolitanized or not, is the standard applied in Texas. Wilson v. Scott, *supra*. Moreover, we fail to see how plaintiff could have been prejudiced in any way by such a standard. The trial court instructed the jury that the relevant standard was that expected of a physician in Arlington, Texas, or a similar community. There was ample evidence that the standard of care for the illness involved was similar throughout the United States. The jury, as a result, was no doubt aware that the communities from which the plaintiff obtained her experts were similar to Arlington in respect to the standard of care expected of a physician under these circumstances. The court's charge therefore gave the jury no reason to discard the testimony of her experts.

■ Finally, we note that the trial court over defendant's objection permitted the plaintiff's doctors to testify that in their opinion the defendant had committed acts amounting to malpractice. This testimony allowed the doctors to invade the factfinding function of the jury. Such an invasion has recently received judicial condemnation by the Texas Supreme Court in Snow v. Bond, Tex.1969, 438 S.W.2d 549. In *Snow* that court said:

"What constitutes negligence or malpractice is a mixed question of law and fact that can only be determined by the trier of fact on the basis of evidence admitted and instructions given by the court. A medical expert is not competent to express an opinion thereon. See Houston & T. C. R. Co. v. Roberts, 101 Tex. 418, 108 S.W. 808. The question of what a reasonable and prudent doctor would have done under the same or similar circumstances must also be determined by the trier of fact after being advised concerning the medical standards of practice and treatment in the particular case. An expert witness can and should give information about these standards without summarizing, qualifying or embellishing his evidence with expressions of opinion as to the conduct that might be expected of a hypothetical doctor similarly situated. The latter is not an appropriate subject for expert testimony. * * *" *Id.* at 550.

Under Texas law, therefore, the testimony objected to was clearly impermissible.

For the foregoing reasons, the judgment of the court below is reversed and the cause is remanded for a new trial.